**WILENTZ, GOLDMAN & SPITZER P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
DAVID H. STEIN, ESQ. (8514)
*Attorneys for TCA Global Credit Master Fund, LP*

------------------------------------------------------X
| | | |
|---|---|---|
| In re: | : | UNITED STATES BANKRUPTCY |
| | : | COURT FOR THE DISTRICT OF |
| DAVID RISTICK, | : | NEW JERSEY |
| | : | |
| | : | Chapter 11 |
| Debtor. | : | |
| | : | Case No.: 17-19196 (ABA) |
| | : | |
| | : | **Hearing Date:  March 8, 2018** |
| | : | **           at 10:00 a.m.** |
| | : | |
| | X | **Oral Argument Requested** |

**OBJECTION OF TCA GLOBAL CREDIT MASTER FUND, LP TO INDIVIDUAL DEBTOR'S CHAPTER 11 COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

TCA Global Credit Master Fund, LP ("TCA"), by and through its counsel, Wilentz, Goldman & Spitzer, P.A., hereby files this objection (the Objection"), to the Individual Debtor's Chapter 11 Combined Plan of Reorganization and Disclosure Statement dated February 7, 2017 (the "Combined Plan and Disclosure Statement"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

The Combined Plan and Disclosure Statement should not be approved because: (i) it fails to include adequate information with which to analyze its merits; (ii) the creditor classifications are improper; and (iii) the Combined Plan and Disclosure Statement is improper in form and substance.

#9742510.4(165685.001)

## I. BACKGROUND

1. On May 3, 2017 (the "Petition Date"), David Ristick (the "Debtor"), filed a voluntary petition for relief pursuant to chapter 11, title 11 of the United States Code (the "Bankruptcy Code").

2. Since the Petition Date, no trustee or examiner has been appointed in these proceedings and the Debtor remains a debtor-in-possession pursuant to §1107 of the Bankruptcy Code.

3. In addition, no creditors' committee has been formed or appointed in these chapter 11 proceedings.

4. On February 7, 2018, the Debtor filed the Combined Plan and Disclosure Statement (Docket Entry No. 92).

5. On August 18, 2017, TCA filed a secured claim against the Debtor in the amount of $5,227,940.09 (Claim No. 16).

6. On February 16, 2018, TCA filed an adversary proceeding against the Debtor, which is currently pending under Adv. Pro. No. 18-01061 (the "Adversary Proceeding"). In the Adversary Proceeding, TCA asserts that the Debtor engaged in fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4), engaged in embezzlement or larceny under 11 U.S.C. § 523(a)(4), and caused TCA willful and malicious injury under 11 U.S.C. § 523(a)(6). In the Adversary Proceeding, TCA also asserts claims against the Debtor for violations of 11 U.S.C. §§ 727(a) (2), (3), (4), (5) and (7), seeking to deny Debtor a discharge in connection with concealment of property, providing a false oath and other such conduct as more fully set forth in the Adversary Proceeding.

## II.    ADDITIONAL FACTS

7.    TCA is a secured creditor of the Debtor and is owed in excess $5 million. TCA's claim arose in connection with TCA providing secured commercial financing services to MPI Industries, LLC ("MPI"), a closely held company involved in the telecommunications industry in which the Debtor served as Chief Executive Officer.

8.    On or about August 26, 2016, a Revolving Note (the "Note"), issued and effective as of August 26, 2016, in the maximum amount of $5,000,000.00 was given by MPI, as Borrower, to TCA, as Lender.

9.    On or about August 26, 2016, TCA entered into a Senior Secured Revolving Credit Facility Agreement (the "Credit Facility Agreement"), in the maximum amount of $5,000,000.00 by and among MPI (as Borrower), MPI Industries Staffing LLC, MPI Communications, Inc., Danny Ristick, Susie Ristick, Debtor and Joy Leo (as Joint and Several Guarantors, and, together with the Borrower, the "Credit Parties"), and TCA (as Lender).

10.    The Debtor is in violation of the Security Agreement into which he entered with TCA. Despite the perfected security interest of TCA, Debtor formed, through his direction, various corporate entities, owned and operated by various family members of the Debtor who were "insiders", which entities were formed before the Petition Date with the purposeful and fraudulent intent to divert business assets and business opportunities from MPI to "insiders" and other related parties.

11.    One of these corporate entities, United Infrastructure, LLC, by whom Debtor is currently employed, is owned by the Debtor's cousin, a former laborer at MPI. United Infrastructure, LLC also employs another cousin of the Debtor, also a former laborer at MPI, as

3

well as Debtor's brother-in-law, and its accounting work is performed by the former bookkeeper for MPI.

12. Another such company, Federal Fuel and Maintenance, L.L.C., was formed by the former bookkeeper for MPI at the request of the Debtor. Said company maintains a place of business at a property owned by the Debtor, and is currently owned by the Debtor's son, who was 17 years old at the time of its formation, together with the Debtor's nephew.

13. Another such company, Hybrid Technologies, L.L.C. is a company which was also formed by the former bookkeeper for MPI, which is owned by the Debtor's father, a former warehouse manager for MPI and by which Debtor was also employed.

### III. ARGUMENT

**A.    The Combined Plan and Disclosure Statement Does Not Contain Adequate Information to Analyze its Merits**

14. Proper disclosure is "the pivotal concept in reorganization procedure under the Code." Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.), 848 F.2d 414, 417 (3d Cir. 1988); see also In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).

15. "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" In re Oneida Motor Freight, Inc., 848 F.2d at 417. "[T]he importance of full and honest disclosure cannot be overstated." Ryan Opers., G.P. v. Santiam Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996).

4

#9742510.4(165685.001)

16. In order to receive Bankruptcy Court approval, the disclosure statement must contain "adequate information" about the debtor, the bankruptcy case, and the plan. 11 U.S.C. § 1125(a)(1).

17. Section 1125 of the Bankruptcy Code defines "adequate information" to mean "information of a kind, and in sufficient detail . . . that would enable a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).

18. Whether a disclosure statement contains "adequate information" is governed by a flexible standard and is to be determined by the bankruptcy court on a case-by-case basis. In re Oneida Motor Freight, Inc., 848 F.2d at 417; see also In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995). The "adequate information" standard requires a plan proponent to include in a disclosure statement all information that would enable holders of claims to take an informed position on the proposed reorganization plan. Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991).

19. "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); see also In re Stanley Hotel, Inc., 13 Bankr. 926, 929 (Bankr. D. Colo. 1981). "A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." Id. at 765. "The disclosure statement must contain information that is material, important and necessary for creditors and shareholders to properly evaluate a proposed plan and thus enable the creditors and shareholders to make a reasonably informed decision on the plan." In re William F. Gable Co., 10 B.R. 248, 249 (Bankr. N.D. W. Va. 1981).

5

#9742510.4(165685.001)

20. "A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on factually supported expectations as to the future course of the business. . . ." Century Glove, Inc. v. First Am. Bank of N.Y., 860 F.2d 94, 100 (3d Cir. 1988) (internal quotation marks omitted).

21. Moreover, courts have set forth a non-exclusive list of the type of information which should be included in a disclosure statement:

   a. The circumstances that gave rise to the filing of the bankruptcy petition;

   b. A complete description of the available assets and their value;

   c. The anticipated future of the debtor;

   d. The source of the information provided in the disclosure statement;

   e. The condition and performance of the debtor while in Chapter 11;

   f. Information regarding claims against the estate;

   g. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

   h. The accounting and valuation methods used to produce the financial information in the disclosure statement;

   i. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insider, directors, and/or officers of the debtor;

   j. A summary of the plan of reorganization;

   k. The collectability of any accounts receivable;

   l. Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

   m. Information relevant to the risks being taken by the creditors;

   n. The actual or projected value that can be obtained from avoidance actions;

   o. The existence, likelihood and possible sources of non-bankruptcy litigation; and

   p. The relationship of the debtor with any affiliates.

#9742510.4(165685.001)

In re Cardinal Congregate I, 121 B.R. at 765; In re Source Enters., Inc., 2007 LEXIS 4770, *7-8 (Bankr. S.D.N.Y. 2007); In re Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

22. There are numerous deficiencies in the Combined Plan and Disclosure Statement and, accordingly, the Debtor has failed to provide adequate information as required. Moreover, the collapsed nature of the Combined Plan and Disclosure Statement prevents Debtor from elaborating on necessary facts and details.

23. First, Debtor fails to provide adequate information with respect to his anticipated future.

24. Specifically, the Debtor has not provided net wages beyond April, 2019. (See Ex. D to the Combined Plan and Disclosure Statement). Although the Combined Plan and Disclosure Statement projects the Debtor's monthly wages to be $10,500.00 from July, 2018 until April, 2019, it does not provide a projection for his earnings over a five (5) year period as required by 11 U.S.C. §1129(a)(15).

25. Second, Debtor's operating reports are inconsistent with the Combined Plan and Disclosure Statement. The Debtor's operating reports for the months of December, 2017 (Docket Entry No. 86) and January, 2018 (Docket Entry No. 91) indicate that the Debtor's income for those respective months was under $6,500; indeed, according to his monthly operating reports, the Debtor's highest post-petition monthly income was in November, 2017, with a monthly income of $8,734.13 (Docket Entry No. 79).  Accordingly, while the Debtor estimates that his monthly earnings will increase over time, he fails to provide any evidence or explanation whatsoever to support an increase in monthly income to $10,500.

26. Furthermore, the Debtor's monthly operating reports fail to provide information regarding the source for and payment of the $5,534 per month mortgage payments on Debtor's residence located at 5 Samantha Court, Sewell, New Jersey (the "Residence") and whether said mortgage is current. This information is also noticeably absent in the Combined Plan and Disclosure Statement.

27. Accordingly, based upon the Debtor's filings in these proceedings, as well as upon the Debtor's apparent lifestyle and activities, the source, amount and accuracy of the Debtor's income and expenses, as reported by the Debtor, is unclear.

28. The Combined Plan and Disclosure Statement also specifies the Debtor's intention to retain a rental property located at 13 Raintree Drive, Sicklerville, New Jersey (the "Raintree Property"), and to make monthly mortgage payments on said property based upon rental income received therefrom. Debtor's lease with the tenant at the Raintree Property, however, expires on July 31, 2018. (See Docket Entry No. 49-2), and the Combined Plan and Disclosure Statement does not provide for an extension or renewal of same. Without a tenant at the Raintree Property, over the course of the Plan period, Debtor will not have sufficient income to pay the monthly mortgage payments of $2,059 per month. In addition, the Debtor fails to list this rental income and the related mortgage payments for the Raintree Property on his monthly operating reports and fails to indicate whether the mortgage on this property is current.

29. Third, Debtor fails to include all necessary financial information, valuations or pro forma projections which would be relevant to creditors' determinations of whether to accept or reject the plan, as well as information relevant to the risks being taken by the

8

creditors. Specifically, the Debtor does not provide a complete description of the value of his assets.

30. Fourth, the Debtor does not provide summaries of appraisals for real property or other evidence or information to legitimize his valuation of personal property assets of the estate.

31. Fifth, the Debtor fails to provide adequate and necessary information regarding claims of the estate. Specifically, although TCA is listed as a class 1 secured creditor, the Debtor asserts that TCA holds an unsecured claim since the Debtor's assets are *de minimis*. The Debtor, however, fails to provide any type of valuation or listing of assets to prove or disprove the value of TCA's secured claim.

32. Sixth, Debtor fails to provide the actual projected value which he asserts may be obtained from the avoidance action which he intends to file against TCA (which, in turn, has filed a non-dischargeability action against the Debtor).

33. Seventh, given the lack of transparency, as well as the paucity of reporting as set forth in the Monthly Operating Reports, it is unclear whether the Debtor has accrued any unpaid administrative claims. Clearly, this should warrant further disclosure.

34. Finally, given the pendency of the Adversary Proceeding, the Debtor should be required to provide disclosures in the Combined Plan and Disclosure Statement regarding the claims raised in the Adversary Proceeding, as well as regarding the uncertainty of feasibility of the Combined Plan and Disclosure Statement should TCA prevail. The Combined Plan and Disclosure Statement should also contain a full reservations rights as to the claims asserted in the Adversary Proceeding, since that matter may very well continue into the future.

9

#9742510.4(165685.001)

### B. Classifications are Improper

35. Debtor's classification of claims is confusing and unclear at best. Notably, the Debtor does not provide any type of valuation to prove or disprove the value of TCA's secured claim or to support his assertion that said claim is, in actuality, unsecured. There is no indication of what TCA's alleged deficiency claim may be, and no information has been provided to allow a determination of same to be made. Furthermore, Debtor indicates that the deficiency claim of any secured creditor will be treated as an unsecured claim in Class 2, the result of which would be creditors voting in both Class 1 and Class 2. Additional disclosure should be made.

36. TCA believes this classification scheme is an attempt to gerrymander classes and voting. Case law is clear that it is improper to classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan. In re W.R. Grace & Co., 2012 WL 2130981 at *37 (D.Del. June 11, 2012). Courts do not permit separate classification of unsecured claims solely to create impaired assenting classes for purposes of a cramdown; rather debtors must provide credible proof of legitimate reasons for separate classification of similar claims. Matter of Boston Post Rd. Ltd. P'ship, 145 B.R. 745, 748 (Bankr. D. Conn. 1992), aff'd sub nom. In re Boston Post Rd. Ltd. P'ship, 154 B.R. 617 (D. Conn. 1993), aff'd, 21 F.3d 477 (2d Cir. 1994); In re Rexford Properties LLC, 558 B.R. 352, 361 (Bankr. C.D. Cal 2016).

37. Still other courts have determined that if classifications are designed to manipulate class voting, or if classification schemes violate basic priority rights, a plan cannot be confirmed. In re Holywell Corp., 913 F.2d 873, 880 (11th Cir. 1990).

38. While debtors can retain some flexibility in the classification of substantially similar claims, they may not separately classify claims only to conjure up an impaired,

assenting class. In re 500 Fifth Ave. Assocs., 148 B.R. 1010, 1019 (Bankr. S.D.N.Y. 1993), aff'd, No. 93 CIV. 844 (LJF), 1993 WL 316183 (S.D.N.Y. May 21, 1993).

39. While TCA recognizes that similar claims are not required to be placed in the same class, similar claims should be treated equally. Matter of Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987). Section 1122(a) specifies that only claims which are "substantially similar" may be placed in the same class. It does not require that similar claims *must* be grouped together, but merely that any group created must be homogeneous. In re AOV Indus., Inc., 792 F.2d 1140, 1150 (D.C. Cir. 1986).

### C. The Combined Plan and Disclosure Statement is Improper

40. Section 105(d) of the Bankruptcy Code provides, in pertinent part, that:

(d) The court, on its own motion or on the request of a party in interest –

(1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and

(2) unless otherwise inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, may issue an order at any such conference prescribing such limitations as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that –
…….
(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

41. Here, the Debtor's Combined Plan and Disclosure Statement is improper on its face, as the Debtor has failed to obtain, or even to request, the necessary court approval for such a filing. As such, the Plan is unconfirmable and should not be submitted for solicitation in its current form.

42. Moreover, an order combining the disclosure statement and confirmation hearings is inconsistent with Section 1125 of the Bankruptcy Code, except in prepackaged cases or 'small business' cases. In re Amster Yard Assocs., 214 B.R. 122, 124–25 (Bankr.

11

S.D.N.Y. 1997) citing Lawrence P. King, *et al., Collier on Bankruptcy* ¶ 105.08, at 105–83 to 105–84 (rev. 15th ed.1997); *accord* 4 William L. Norton, Jr., *Norton Bankruptcy Law & Practice* 2d § 91:16, at 89 (Supp. Aug. 1996); David G. Epstein, *Basics of Bankruptcy: Plan Acceptance and Disclosure,* 746 PLI/Comm 593, 603 (1996); *see* In re Aspen Limousine Serv., Inc., 187 B.R. 989, 995 (Bankr.D.Colo.1995), *aff'd,* 193 B.R. 325 (D.Colo.1996).

43. In Amster Yard Assocs, the court in the Southern District of New York did not condone the expedited process. Moreover, the court found that Section 105(d) of the Bankruptcy Code is limited by its terms, as the court cannot make an order which is inconsistent with the Bankruptcy Code or Rules. Id. at 124.

44. Furthermore, the Amster Yard Court found that Section 105(d) of the Bankruptcy Code did not authorize the court to preliminarily approve the disclosure statement subject to a final hearing. Id.

45. The power to preliminarily approve a disclosure statement should be used sparingly. Id. Preliminary approval comes after the court's *ex parte* review. Id. at 125. The Amster Yard Court disfavored the collapsed process, indicating that the parties were more familiar than the court with the case, and were more likely to spot inaccuracies and deficiencies. Id. The Amster Yard Court found that not having the opportunity to raise potential objections to the disclosure statement and negotiate necessary changes would negatively affect creditors. Id. "Still, human nature being what it is, plan proponents will be less willing to make modifications that could nullify votes they have already solicited." Id. Further, courts may be reluctant to delay confirmation based on shortcomings that might have foreclosed approval of the disclosure statement if the hearings had not been combine (professionals must be retained by the court before they render services to permit consideration

12

of disqualifying relationships "unaffected by the emotional pressure which inevitably arises in their favor after the services have been rendered"). Id.

46. Accordingly, the collapsed structure of the Combined Plan and Disclosure Statement is prejudicial to TCA and to other creditors, as all creditors should be able to voice their objections to a disclosure statement and plan separately. Here, the attempted expedited process would limit necessary negotiations and subsequent required changes to the Combined Plan and Disclosure Statement.

## CONCLUSIONS AND RESERVATIONS OF RIGHTS

47. For the reasons stated herein, TCA respectfully requests that this Court deny the approval of the Combined Plan and Disclosure Statement.

48. TCA hereby expressly reserves all of its rights under the Bankruptcy Code and/or otherwise with respect to the Combined Plan and Disclosure Statement (as such may be amended, modified or supplemented). TCA specifically reserves its rights to object to the Debtor's discharge and to pursue the Adversary Proceeding against the Debtor.

**WHEREFORE**, TCA respectfully requests that this Court (i) sustain the Objection of TCA; (ii) deny approval of the Combined Plan and Disclosure Statement and (iii) and grant such other and further relief as this Court deems just and proper under the circumstances.

    Respectfully submitted,

    **WILENTZ, GOLDMAN & SPITZER, P.A.**
    *Attorneys for TCA Global Credit Master Fund, LP*


    By:   /s/ *David H. Stein*
           DAVID H. STEIN

Dated: February 22, 2018