UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

JERROLD S. KULBACK, ESQUIRE
ARCHER & GREINER
A Professional Corporation
Three Logan Square, 35th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 246-3162
Fax: (215) 963-9999
*Attorneys for Debtor*

| | |
|---|---|
| In Re: | Chapter 11 |
| DAVID RISTICK, | Case No. 17-19196 (ABA) |
| Debtor. | |

## INDIVIDUAL DEBTOR'S FIRST AMENDED CHAPTER 11 COMBINED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT

This Combined Plan of Liquidation and Disclosure Statement is presented to you to inform you of the proposed Plan for restructuring the debt of David Ristick (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

> Jerrold S. Kulback, Esquire
> Archer & Greiner, P.C.
> Three Logan Square, 35th Floor
> 1717 Arch Street
> Philadelphia, PA 19103
> jkulback@archerlaw.com

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [HEARING DATE/TIME] IN COURTROOM NO. 4B AT THE MITCHELL H. COHEN U.S. COURTHOUSE, 400 COOPER STREET, 4TH FLOOR, CAMDEN, NEW JERSEY, 08101.**

Your rights may be affected by this Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

Dated:  March 15, 2019

By:  _/s/ Jerrold S. Kulback_____
Jerrold S. Kulback
ARCHER & GREINER
A Professional Corporation
Three Logan Square, 35th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone:  (215) 246-3162
Fax:  (215) 963-9999
*Attorneys for Debtor*

# TABLE OF CONTENTS

**Page**

ARTICLE 1      BACKGROUND OF THE DEBTOR ........................................................ 4

   1.1    Filing of the Debtor's Chapter 11 Case .................................................. 4

   1.2    Events Leading to the Filing of the Bankruptcy Case ........................... 4

   1.3    Past, Current and Projected Income ...................................................... 4

   1.4    Debtor's Assets ..................................................................................... 5

   1.5    Debtor's Liabilities ............................................................................... 5

   1.6    Significant Events During the Bankruptcy Case ................................... 5

   1.7    Projected Recovery of Avoidable Transfers .......................................... 7

ARTICLE 2      THE PLAN .................................................................................... 7

   2.1    Unclassified Claims .............................................................................. 7

   2.2    Classes of Claims ............................................................................... 10

   2.3    Claims Objections .............................................................................. 13

   2.4    Treatment of Executory Contracts and Unexpired Leases .................. 14

   2.5    Means for Implementation of the Plan ................................................ 14

   2.6    Disbursing Agent ............................................................................... 16

   2.7    Tax Consequences of Plan .................................................................. 16

   2.8    Risk Factors/Mitigating Factors ......................................................... 16

ARTICLE 3      FEASIBILITY OF PLAN ................................................................. 16

   3.1    Ability to Initially Fund Plan .............................................................. 16

   3.2    Ability to Make Future Plan Payments Without Further Reorganization ............ 17

ARTICLE 4      LIQUIDATION VALUATION ......................................................... 17

ARTICLE 5      DISCHARGE ................................................................................ 17

   5.1    Discharge. ........................................................................................... 17

ARTICLE 6      GENERAL PROVISIONS. ............................................................. 17

   6.1    Title to Assets. .................................................................................... 17

   6.2    Binding Effect. .................................................................................... 17

   6.3    Severability. ........................................................................................ 18

   6.4    Retention of Jurisdiction by the Bankruptcy Court. ........................... 18

   6.5    Captions. ............................................................................................ 18

   6.6    Modification of Plan. .......................................................................... 18

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 6.7 | Final Decree. | 18 |
| 6.8 | Material Default Defined. | 18 |
| ARTICLE 7 | ATTACHMENTS. | 19 |
| ARTICLE 8 | FREQUENTLY ASKED QUESTIONS. | 19 |
| ARTICLE 9 | DEFINITIONS. | 20 |
| 9.2 | 5 Nottingham Way Property | 21 |
| 9.3 | 5 Samantha Court Property | 21 |
| 9.4 | 13 Raintree Drive Property | 21 |
| 9.5 | 170 Hurffville-Crosskeys Road Property | 21 |
| 9.6 | A&G | 21 |
| 9.7 | Administrative Claimant. | 21 |
| 9.8 | Administrative Expense | 21 |
| 9.9 | Administrative Tax Claim | 21 |
| 9.10 | Allowed Claim | 21 |
| 9.11 | Allowed Priority Tax Claim | 21 |
| 9.12 | Allowed Secured Claim | 21 |
| 9.13 | Allowed Unsecured Claim. | 21 |
| 9.14 | Bankruptcy Code or Code | 22 |
| 9.15 | Bankruptcy Court | 22 |
| 9.16 | Bankruptcy Rules | 22 |
| 9.17 | Cash | 22 |
| 9.18 | Chapter 11 Case | 22 |
| 9.19 | Claim. | 22 |
| 9.20 | Class | 22 |
| 9.21 | Committee | 22 |
| 9.22 | Confirmation. | 22 |
| 9.23 | Confirmation Date. | 22 |
| 9.24 | Confirmation Hearing. | 22 |
| 9.25 | Confirmation Order | 22 |
| 9.26 | Creditor. | 23 |

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 9.27 | Curchin. | 23 |
| 9.28 | Debtor and Debtor-in-Possession | 23 |
| 9.29 | Disclosure Statement. | 23 |
| 9.30 | Disputed Claim. | 23 |
| 9.31 | Distributions | 23 |
| 9.32 | Effective Date | 23 |
| 9.33 | Executory Contracts. | 23 |
| 9.34 | Final Order. | 23 |
| 9.35 | IRC | 23 |
| 9.36 | Petition Date. | 23 |
| 9.37 | Plan | 23 |
| 9.38 | Plan Proponent | 23 |
| 9.39 | Priority Tax Claim | 23 |
| 9.40 | Reorganized Debtor | 23 |
| 9.41 | Schedules. | 23 |
| 9.42 | Secured Creditor | 23 |
| 9.43 | Unsecured Creditor | 24 |

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan's treatment of Allowed Claims is detailed more fully hereinbelow. This summary is provided to give you a concise overview of the pertinent terms of the Debtor's Plan.

Proposed Treatment of Administrative Expenses: Administrative Expenses once determined and allowed, will be paid on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of the Administrative Expense Claim agrees to different treatment. In this case, Administrative Expenses include compensation to A&G, Curchin and any unpaid statutory fees owing to the Office of the United States Trustee. The Debtor will pay ordinary household expenses and post-petition obligations according to their terms.

Proposed Treatment of Priority Tax Claims: Allowed Priority Tax Claims will be paid on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of the Allowed Priority Tax Claim agrees to different treatment. In this case, the following chart lists the Priority Tax Claims and their proposed treatment:

| Claim No. | Creditor | Amount of Priority Tax Claim | Basis of Claim | Treatment |
|---|---|---|---|---|
| 12 | Colorado Department of Revenue | $9,697.00 | 2014 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 17 | State of New Jersey - Division of Taxation | $33,145.15 | 2014 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 18 | State of New Jersey - Division of Taxation | $26,500.00 | 2016 taxes | The Debtor is in the process of reviewing this Priority Claim. To the extent that these taxes are due and owing from the Debtor, this Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |

1

| 20 | Utah State Tax Commission | $2,535.75 | 2015 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |

Proposed Treatment of Secured Claims:  The following chart lists the Secured Claims and their proposed treatment:

| Claim No. | Creditor | Amount of Secured Claim | Basis of Claim | Treatment |
|---|---|---|---|---|
| 1 | JPMorgan Chase Bank, N.A. | $81,358.30 | Lien on 2015 Cadillac Escalade VIN#1GYS4JKJ4FR151401 | This Creditor was granted relief from the automatic stay on September 26, 2017 and has repossessed the vehicle. The Secured Claim of this Creditor is deemed satisfied, and this Secured Claim will be disallowed. |
| 3 | Ally Capital | $6,024.31 | Lien on 2013 Chevrolet Suburban VIN#1GNSKKE74DR163618 | Unless the holder of this Secured Claim agrees to different treatment, the Debtor will pay the entire amount of this Secured Claim by making all post-Confirmation regular monthly payments of approximately $321.72 beginning on the month following the Effective Date of the Plan. All pre-Confirmation arrears (if any) will be capitalized and paid with interest and other allowable fees and charges. The source of payments will be the Debtor's income. The Debtor intends to retain the vehicle and title thereto. The Creditor may not possess or dispose of the vehicle so long as the Debtor is not in material default in performing his obligations under the Plan. |
| 4 | Ally Capital | $16,656.83 | Lien on 2014 Chevrolet Silverado VIN#1GC1KXCG6EF168889 | Unless the holder of this Secured Claim agrees to different treatment, the Debtor will pay the entire amount of this Secured Claim by making all post-Confirmation regular monthly payments of approximately $575.33 beginning on the month following the Effective Date of the Plan. All pre-Confirmation arrears (if any) will be capitalized and paid with interest and other allowable fees and charges. The source of payments will be the Debtor's income. The Debtor intends to retain the vehicle and title thereto. The Creditor may not possess or dispose of the vehicle so long as the Debtor is not in material default in performing his |

| | | | | obligations under the Plan. |
|---|---|---|---|---|
| 8 | Ditech Financial LLC fka Green Tree Servicing LLC | $137,156.08 | Mortgage on 5 Nottingham Way Property | This Claim will be allowed and will be paid at closing of the sale of the 5 Nottingham Way Property, unless the holder of this Claim agrees to different treatment. |
| 9 | Glia Group LLC | $10,978.85 | Tax Lien on 170 Hurffville Crosskeys Road Property | This Claim will be allowed in the amount as may be calculated by the Tax Collector of Washington Township (as of January 4, 2019 the amount was $8,795.97) and will be paid at closing of the sale of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Claim agrees to different treatment. |
| 10 | Santander Consumer USA, Inc. | $30,208.29 | Lien on 2013 Chevrolet Traverse Vin#1GNKRGKDXDJ243877 | This vehicle is titled to and in the possession of Sam C. Mitchell, a co-borrower on this loan.  The Debtor is not in possession of the vehicle.  The Confirmation Order shall constitute an order granting relief from the automatic stay permitting the Secured Creditor to possess and dispose of the vehicle, subject to any rights of Sam C. Mitchell. This Secured Claim is deemed satisfied through this treatment. |
| 13 | Nationstar Mortgage LLC | $219,465.56 | Mortgage on 13 Raintree Drive Property | This Creditor was granted relief from the automatic stay on June 8, 2018, and the 13 Raintree Drive Property was sold at Sherriff's sale on October 3, 2018.  The Secured Claim of this Creditor is deemed satisfied, and this Secured Claim will be disallowed. |
| 16 | TCA Global Credit Master Fund, LP | $5,227,940.09 | UCC-1 on "all assets" | The Debtor owns de minimis assets subject to this Secured Claim. Pursuant to the Settlement Agreement, this Secured Claim will be treated as a fully Unsecured Claim, and will be provided treatment as set forth in the Settlement Agreement, as approved by the Court. |
| 21 | Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-3, as assignee of OceanFirst Bank | $494,917.57 | Mortgage on 5 Samantha Property | On the Effective Date of the Plan, this Creditor shall be granted relief from the automatic stay with respect to the 5 Samantha Court property.  The Secured Claim of this Creditor is deemed satisfied through foreclosure of the 5 Samantha Court property, and this Secured Claim will be disallowed.  All of the Debtor's rights to request foreclosure mediation or other loss mitigation are reserved. |

Proposed Treatment of Unsecured Claims: The Plan identifies a Class consisting of all of Allowed Unsecured Claims against the Debtor. The Unsecured Claims comprising this Class under the Plan, whether scheduled by the Debtor or filed by Creditors, to the extent remaining unpaid, and subject to any objections which may be sustained, total approximately $6,170,613.33, as set forth on Exhibit "B" hereto. Under the Plan, Allowed Unsecured Claims shall receive a *pro rata* distribution from the net proceeds from the sale of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property, after payment of the Administrative Expenses and Allowed Priority Tax Claims, provided that Allowed Unsecured Claims for which a distribution would be less than $10.00 will not receive any distribution. In no event will Allowed Unsecured Claims receive more than the full amount of the Allowed Claim.

At all times, the Debtor shall retain its assets and title thereto, and continue to manage his financial affairs.

## ARTICLE 1
## BACKGROUND OF THE DEBTOR

### 1.1    Filing of the Debtor's Chapter 11 Case

On May 3, 2017, the Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Case is pending in the Bankruptcy Court in Camden, New Jersey.

### 1.2    Events Leading to the Filing of the Bankruptcy Case

The Debtor was the 49% owner of MPI Industries, LLC ("MPI"), a business that operated in the telecommunications industry. Debtor's membership interests in MPI were pledged to TCA Global Credit Master Fund, LP (TCA") in connection with a credit facility provided by TCA to MPI. In early 2016, as a result of alleged defaults under the credit facility, TCA purported to exercise the pledge of the membership interests and take ownership and control of all of the Debtor's membership interests in MPI, and to terminate Debtor's employment with MPI. TCA also filed a lawsuit against the Debtor in the Circuit Court of the 17th Judicial District in and for Broward County, Florida, Case No. CACE-17-005616. That lawsuit prompted the bankruptcy filing.

### 1.3    Past, Current and Projected Income

### A.    Past Income

In 2014, the Debtor showed approximately $1.4 million of income from MPI. The following year, MPI suffered significant losses resulting in losses to the Debtor of $891,856. Since early 2016 when TCA took ownership and control of all of the Debtor's membership interests in MPI, the Debtor has had no involvement with MPI. Debtor's income for 2016, 2017, 2018 and 2019 YTD has been nominal.

### B.    Current Income and Projected Income

Since being terminated by MPI, the Debtor has continued to work within the telecommunications industry to allow him to utilize his knowledge and experience. During the Chapter 11 Case, the Debtor was employed by United Infrastructure LLC ("United Infrastructure") and Global World Staffing ("Global Staffing"), both of which operate in the telecommunications industry. However, those companies ceased operating, and the Debtor collected unemployment for period of time. The Debtor has recently begun employment with Guardian Services, LLC. A copy of the last Monthly Operating Report filed by the Debtor is attached as Exhibit "C."

### 1.4    Debtor's Assets

Debtor's assets as of the Petition Date are set forth in the Liquidation Analysis attached as Exhibit "A" hereto. Debtor's cash on hand and deposits in banks may have changed since the Petition Date, with the closing of the Debtor's pre-petition bank accounts and establishment of debtor-in-possession ("DIP") account.

### 1.5    Debtor's Liabilities

Debtor's liabilities are set forth in the Schedule of Claims attached hereto as Exhibit "B." The Debtor reserves all rights with respect to objecting to the nature, extent, validity, and allowance of any Claims filed or scheduled in the Bankruptcy Case, including, without limitation, the Claims set forth in the Schedule of Claims.

### 1.6    Significant Events During the Bankruptcy Case

The following is a chronological list of significant events which have occurred during the Chapter 11 Case:

- The Chapter 11 Case was commenced on May 3, 2017. No Official Committee of Unsecured Creditors was or has been formed.

- On July 5, 2017, the Bankruptcy Court approved the retention and employment of A&G as counsel to the Debtor [D.I. 26].

- On August 17, 2017, the Debtor filed a Motion to Reject Lease of Residential Real Estate Located At 3 Samantha Court, Sewell, New Jersey [D.I. 45], seeking to reject a lease which had no value to the Debtor's Estate. That motion was granted on September 12, 2017 [D.I. 55].

- On August 22, 2017, Americredit Financial Services, Inc. d/b/a GM Financial filed a Motion for Relief From Stay With Respect to the Debtor's 2016 Chevrolet Colorado [D.I. 48] (the "Americredit Stay Relief Motion"). That motion was granted on September 12, 2017 [D.I. 53].

- On August 24, 2017, the Debtor filed a Motion to Authorize Entry Into Lease For 13 Raintree Drive, Sicklerville, New Jersey [D.I. 49] (the "13 Raintree Lease Motion"), seeking to enter into a lease which would provide value to the Debtor's Estate. Nationstar Mortgage LLC opposed the motion. The parties were able to reach an agreement and a consent order was entered on January 5, 2018 [D.I. 81]. The Debtor subsequently defaulted under the consent order, and the Creditor was granted relief from the automatic stay with respect to the 13 Raintree Drive Property on June 8, 2018 [D.I. 114].

- On August 30, 2017, JPMorgan filed a Motion for Relief From Stay With Respect to the Debtor's 2015 Cadillac Escalade [D.I. 51] (the "JPMorgan Stay Relief Motion"). That motion was granted on September 26, 2017 [D.I. 67].

- On February 2, 2018, the Bankruptcy Court approved the retention and employment of Curchin as accountant to the Debtor [D.I. 87].

- Throughout the pendency of the Bankruptcy Case, the Debtor has provided one or more extensions of time within which to file a complaint objecting to discharge under section 727 or to dischargeability of particular debts under section 523 to TCA. On October 10, 2017, the Court entered a Consent Order providing TCA with an extension of time until February 20, 2018 by which to file such a complaint(s) [D.I. 72].

- The Debtor has filed Monthly Operating Reports ("MORs") through and including the period January 2019.

- On February 16, 2018, TCA filed Adversary Proceeding No. 18-1061 seeking a determination of non-dischargeability under Section 523 of the Bankruptcy Code and/or to deny the Debtor a discharge under Section 727 of the Bankruptcy Code. That Adversary Proceeding has been settled pursuant to the Settlement Agreement.

- On November 27, 2018, the Bankruptcy Court approved the retention and employment of Michelle Basmajian/Weichert Realtors as realtor to the Debtor to sell the 170 Hurffville-Crosskeys Road property [D.I. 131].

- On February 12, 2019, the Debtor filed a Motion to approve the Settlement Agreement [D.I. 140]. On March 12 2019, the U.S. Trustee objected to the settlement. The Bankruptcy Court overruled the U.S. Trustee's objection and entered an Order on _____ approving the Settlement Agreement [D.I. __].

- On February 20, 2019, the Bankruptcy Court approved the retention and employment of Michelle Basmajian/Weichert Realtors as realtor to the Debtor to sell the 5 Nottingham Way property [D.I. 131].

- On March 12, 2019, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-3 filed a Motion for Relief from Stay with respect to the 5 Samantha Property. The Debtor does not intend to oppose the motion.

- No other adversary proceedings have been filed and no other motions remain pending.

### 1.7    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preferences, fraudulent transfers, or other avoidance actions.

**ARTICLE 2**
**THE PLAN**

The Debtor's Plan must describe how his Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims is impaired or unimpaired. A Claim can be impaired if the Plan alters the legal, equitable, or contractual rights to which the holder of the Claim is otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1    Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

## A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.  If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor makes any purchases or obtains any services following his filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary practices and terms between the Debtor and his Creditors.

2.    If the Debtor received goods he has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

The following chart lists the Debtor's estimated Administrative Expenses (excluding fees and expenses owed to professionals retained by the Debtor during the course of his bankruptcy proceedings), and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | TBD | Paid in full on the later of the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claims | None | |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | |
| Clerk's Office fees | TBD | Paid in full on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property. |
| Other Administrative Expenses | None | |

| United States Trustee Fees[1] | TBD | Paid in full on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property. |
|---|---|---|
| **TOTAL** | | |

       3.     Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

       The following chart lists the Debtor's estimated fees and expenses owed to professionals, and their proposed treatment under the Plan:

| Administrative Claimant | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Archer & Greiner, P.C., attorneys for the Debtor | $35,000.00 | Paid in full on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way property, or such other date to which the Administrative Claimant may agree. |
| The Curchin Group, accountants for the Debtor | $2,500.00 | Paid in full on the Effective Date of the Plan, or as soon thereafter as practical, from the Sale Proceeds, or such other date to which the Administrative Claimant may agree. |
| Michelle Basmajian/Weichert Realtors | 6% of gross sale proceeds from sale of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property | Paid at closing from sale of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way property |
| **TOTAL** | **$37,500.00** | |

## B.    Priority Tax Claims

       Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Bankruptcy Code. Unless the holder of such a section 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid, with interest as determined by applicable non-bankruptcy law, over a period not exceeding five (5) years from the date of order of relief.

---

[1] All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the Bankruptcy Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property.

Allowed Priority Tax Claims will be paid on the Effective Date of the Plan, or as soon thereafter as practical, from the Sale Proceeds, unless the holder of the Allowed Priority Tax Claim agrees to different treatment. In this case, the following chart lists the Priority Tax Claims and their proposed treatment:

| Claim No. | Creditor | Amount of Priority Tax Claim | Basis of Claim | Treatment |
|-----------|----------|------------------------------|----------------|-----------|
| 12 | Colorado Department of Revenue | $9,697.00 | 2014 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 17 | State of New Jersey - Division of Taxation | $33,145.15 | 2014 | This Priority Tax Claim will be allowed as filed and will be paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 18 | State of New Jersey - Division of Taxation | $26,500 | 2016 taxes | The Debtor is in the process of reviewing this Priority Claim. To the extent that these taxes are due and owing from the Debtor, this Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 20 | Utah State Tax Commission | $2,535.75 | 2015 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |

### 2.2    Classes of Claims

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under section 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a

-10-

general unsecured Claim; provided, however, that the Debtor may not modify a Claim secured by a security interest in real property that is his or her principal residence.

The following chart lists the Secured Claims and their proposed treatment:

| Class | Creditor | Insider? | Amount of Secured Claim | Basis of Claim | Impaired | Treatment |
|---|---|---|---|---|---|---|
| 1A | JPMorgan Chase Bank, N.A. | No | $81,358.30 | Lien on 2015 Cadillac Escalade | No | This Creditor was granted relief from the automatic stay on September 26, 2017 and has repossessed the vehicle. The Secured Claim of this Creditor is deemed satisfied, and this Secured Claim will be disallowed. |
| 1B | Ally Capital | No | $6,024.31 | Lien on 2013 Chevrolet Suburban | Yes | Unless the holder of this Secured Claim agrees to different treatment, the Debtor will pay the entire amount of this Secured Claim by making all post-Confirmation regular monthly payments of approximately $321.72 beginning on the month following the Effective Date of the Plan. All pre-Confirmation arrears (if any) will be capitalized and paid with interest and other allowable fees and charges. The source of payments will be the Debtor's income. The Debtor intends to retain the vehicle and title thereto. The Creditor may not possess or dispose of the vehicle so long as the Debtor is not in material default in performing his obligations under the Plan. |
| 1C | Ally Capital | No | $16,656.83 | Lien on 2014 Chevrolet Silverado | Yes | Unless the holder of this Secured Claim agrees to different treatment, the Debtor will pay the entire amount of this Secured Claim by making all post-Confirmation regular monthly payments of approximately $575.33 beginning on the month following the Effective Date of the Plan. All pre-Confirmation arrears (if any) will be capitalized and paid with interest and other allowable fees and charges. The source of payments will be the Debtor's income. The Debtor intends to retain the vehicle and title thereto. The Creditor may not possess or dispose of the vehicle so long as the Debtor is not in material default in performing his obligations under the Plan. |
| 1D | Ditech Financial LLC fka Green Tree Servicing LLC | No | $137,156.08 | Mortgage on 5 Nottingham Way Property | Yes | This Claim will be allowed in the amount filed and will be paid at closing of the sale of the 5 Nottingham Way Property, unless the holder of this Claim agrees to different treatment. |

| 1E | Glia Group LLC | No | $10,978.85 | Tax Lien on 170 Hurffville Crosskeys Road Property | Yes | This Claim will be allowed in the amount as may be calculated by the Tax Collector of Washington Township (as of February 2, 2018 the amount was $8,191.53) and will be paid at closing of the sale of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Claim agrees to different treatment. |
| 1F | Santander Consumer USA, Inc. | No | $30,208.29 | Lien on 2013 Chevrolet Traverse | Yes | This vehicle is title to and in the possession of Sam C. Mitchell, a co-borrower on this loan. The Debtor is not in possession of the vehicle. The Confirmation Order shall constitute an order granting relief from the automatic stay permitting the Secured Creditor to possess and dispose of the vehicle, subject to any rights of Sam C. Mitchell. This Secured Claim is deemed satisfied through this treatment. |
| 1G | Nationstar Mortgage LLC | No | $219,465.56 | Mortgage on 13 Raintree Drive Property | Yes | This Creditor was granted relief from the automatic stay on June 8, 2018, and the 13 Raintree Drive Property was sold at Sheriff's sale on October 3, 2018. The Secured Claim of this Creditor is deemed satisfied, and this Secured Claim will be disallowed. |
| 1H | TCA Global Credit Master Fund, LP | No | $5,227,940.09 | UCC-1 on "all assets" | Yes | The Debtor owns de minimis assets subject to this Secured Claim. Pursuant to the Settlement Agreement, this Secured Claim will be treated as a fully Unsecured Claim, and will be provided treatment as set forth in the Settlement Agreement, as approved by the Court. |
| 1I | Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-3, as assignee of OceanFirst Bank | No | $494,917.57 | Mortgage on 5 Samantha Court Property | Yes | On the Effective Date of the Plan, this Creditor shall be granted relief from the automatic stay with respect to the 5 Samantha Court property. The Secured Claim of this Creditor is deemed satisfied through foreclosure of the 5 Samantha Court Property, and this Secured Claim will be disallowed. |

### B.    Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes.  The Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim.  However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under sections 507(a)(1), (4), (5), (6), and (a)(7) of the Bankruptcy Code and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impaired? (Yes or No) | Proposed Treatment |
| --- | --- | --- | --- | --- |
| None | No Creditors in this Class | | | |

### C.    Classes of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Bankruptcy Code.

The following chart summarizes the Plan's proposed treatment of Class 2, which contains all allowed general unsecured Claims against the Debtor:

| Class # | Description | Impaired? (Yes or No) | Proposed Treatment |
| --- | --- | --- | --- |
| 2 | This Class contains all of the Debtor's Allowed General Unsecured Claims remaining unpaid, whether scheduled or filed by Creditors.  These Claims, subject to objection and final allowance, total approximately $6,170,613.33, as set forth in the Schedule of Claim attached hereto as Exhibit "B." | Yes | Allowed Unsecured Claims shall receive a pro rata distribution from the proceeds of (i) the 170 Hurffville-Crosskeys Road Property, and (ii) the 5 Nottingham Way Property, after payment of the Administrative Expenses and Allowed Priority Tax Claims, provided that Allowed Unsecured Claims for which a distribution would be less than $10.00 will not receive any distribution.  In no event will Allowed Unsecured Claims receive more than the full amount of the Allowed Claim. |

### 2.3    Claims Objections

The Debtor or any other party in interest may object to the amount or validity of any Claim by filing an objection with the Bankruptcy Court before the later of (i) 90 days after the Confirmation Date, or (ii) 30 days after the Claim is properly filed, and serving a copy of the objection on the holder of the Claim.  Any Claim that is timely filed and not objected to in accordance with this Section 2.3 shall be deemed allowed.  The Claim objected to will be treated as a Disputed Claim under the Plan.  If a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the

Plan. Debtor may object to the claim of Vermeer. If successful, the percentage distribution to Allowed Unsecured Claims will significantly increase.

### 2.4    Treatment of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The Debtor's lease of 3 Samantha Court, Sewell, New Jersey was rejected by prior Order of the Bankruptcy Court. The Debtor has no other Executory Contracts.

### 2.5    Means for Implementation of the Plan

The Plan will primarily be funded from the sale of two pieces of real estate as follows:

The Debtor shall sell the 170 Hurffville-Crosskeys Road Property, which is currently listed for sale with Michelle Basmajian of Weichert Realtors. The sale shall be free and clear of all liens and encumbrances on the property. The Confirmation Order shall act as an Order authorizing the sale of the property free and clear of all liens and encumbrances. The Debtor does not believe that there are any liens or encumbrances on the 170 Hurffville-Crosskeys Road Property other than the following:

- Tax Sale Certificate No. 12-00172 sold to US Bk-Cust/Pro Cap II, LLC – This tax sale certificate was redeemed prior to the Petition Date but never discharged of record.

- Tax Sale Certificate No. 16-00198  sold to GLIA Group, LLC – This tax sale certificate will be redeemed at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property .

- NJ Division of Taxation judgment DJ-167396-2016 in the sum of $50,706.30 – The Debtor believes that this judgment related to Claim No. 17 filed by the State of New Jersey Division of Taxation, which claim will be paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property.

- De Lage Landen Financial Services, Inc. judgment DJ-233188-2016 in the sum of $750,553.32 - The Debtor does not believe that this Creditor levied upon the 170 Hurffville-Crosskeys Road Property. Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

- South Jersey Adjustment Bureau judgment DJ-026201-2017 in the sum of $4,873.96 - The Debtor does not believe that this Creditor levied upon the 170 Hurffville-Crosskeys Road Property. Accordingly, the Confirmation

Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

The net sale proceeds from the sale of the 170 Hurffville-Crosskeys Road Property will be utilized to fund payments for Administrative Expenses, Allowed Priority Tax Claims, and a distribution to Allowed Unsecured Creditors.

The Debtor shall also sell the 5 Nottingham Way Property, which is currently listed for sale with Michelle Basmajian of Weichert Realtors. The sale shall be free and clear of all liens and encumbrances on the property. The Confirmation Order shall act as an Order authorizing the sale of the property free and clear of all liens and encumbrances. The Debtor does not believe that there are any liens or encumbrances on the 5 Nottingham Way Property other than the following:

- Mortgage of Ditech Financial LLC fka Green Tree Servicing LLC with an estimated payoff as of January 23, 2019, of $165,038.35.

- NJ Division of Taxation judgment DJ-167396-2016 in the sum of $50,706.30 – The Debtor believes that this judgment related to Claim No. 17 filed by the State of New Jersey Division of Taxation, which claim will be paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property.

- De Lage Landen Financial Services, Inc. judgment DJ-233188-2016 in the sum of $750,553.32 - The Debtor does not believe that this Creditor levied upon the 5 Nottingham Way Property. Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

- South Jersey Adjustment Bureau judgment DJ-026201-2017 in the sum of $4,873.96 - The Debtor does not believe that this Creditor levied upon the 5 Nottingham Way Property. Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

The net sale proceeds from the sale of the 5 Nottingham Way Property will be utilized to fund payments for any remaining Administrative Expenses and Allowed Priority Tax Claims that are not paid from the sale of the 170 Hurffville-Crosskeys Road Property, and to fund a distribution to Allowed Unsecured Creditors.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand from the sale of the 170 Hurffville-Crosskeys Road Property to make the payments required on the Effective Date.

-15-

As provided in Paragraph 2.1 of this Combined Plan and Disclosure Statement, all United States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the Effective Date, from the Sale Proceeds. All United States Trustee Fees which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor prior to the Debtor's case being closed, converted or dismissed.

**2.6     Disbursing Agent**

Distributions to Creditors provided for in this Plan will be made by A&G.

**2.7     Tax Consequences of Plan**

***Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: Debtor does not anticipate incurring additional tax debt as a result of confirmation of the Plan or thereafter. As a result of the bankruptcy, any debt discharged will not give rise to a taxable event. Creditors will not be entitled to issue a Form 1099-C to Debtor. Creditors who are able to enjoy some tax benefit by writing off "bad" or uncollectible debts may be able to realize such benefit to the extent of their unpaid balances exceed distributions to be made under the Plan.

**2.8     Risk Factors/Mitigating Factors**

The risk of the Debtor not being able to consummate the Plan is determined by his ability to sell the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property and utilize the sale proceeds to fund the Plan.

**ARTICLE 3**
**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1     Ability to Initially Fund Plan**

The Plan Proponent believes that since the Effective Date of the Plan coincides with closing on the sale of the 170 Hurffville-Crosskeys Road Property, the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Specifically, the sale of the 170 Hurffville-Crosskeys Road Property should net the following proceeds:

| | |
|---|---:|
| Purchase Price - 170 Hurffville-Crosskeys Road property | $239,000.00 |
| Less Commission (6%) | ($14,340.00) |
| Less Real Estate Taxes | ($14,872.93) |
| Less Real Estate Tax Lien – Glia Group, LLC | ($8,795.97) |

| | |
|---|---|
| Miscellaneous closing costs | ($5,000.00) |
| **Net sale proceeds available on Effective Date** | **$195,991.10** |
| To Pay Administrative Expenses | $37,500.00 |
| To Pay Priority Tax Claims | $71,877.90 |

**3.2     Ability to Make Future Plan Payments Without Further Reorganization**

The Plan Proponent must also show that there will be enough cash over the life of the Plan to make the required Plan payments.  Since the Plan is being funded through liquidation of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property, this requirement is satisfied.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION VALUATION.

To confirm the Plan, the Bankruptcy Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Creditors would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as Exhibit "A."

## ARTICLE 5
## DISCHARGE

**5.1     Discharge.**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1     Title to Assets.**

Except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims of Creditors of the Debtor.

**6.2     Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to

in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6    Modification of Plan.

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an Allowed Unsecured Claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of the Claim made other than under the Plan.

### 6.7    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.8    Material Default Defined.

If the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected Creditor may serve upon the Debtor and the Debtor's attorney (if any) a written notice of default. The Debtor is in material default under the Plan if the Debtor fails within 21 days of service of such notice of default, plus three additional days if served by mail, either: (i) to cure the default; or (ii) to obtain from the Bankruptcy Court an extension of time to cure the default or a determination that no default occurred.

**ARTICLE 7**
**ATTACHMENTS.**

The following documents accompany the Combined Plan and Disclosure Statement:

Exhibit "A" – Liquidation Analysis

Exhibit "B" – Schedule of Claims

Exhibit "C" - Debtor's most recent Monthly Operating Report

**ARTICLE 8**
**FREQUENTLY ASKED QUESTIONS.**

What Is the The Debtor Attempting to Do in Chapter 11? Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against him/her. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

If the Plan of Reorganization or Liquidation Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure Statement? In order to confirm a plan of reorganization or liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which he/she is doing with this Combined Plan and Disclosure Statement. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

How Do I Determine Which Class I Am In? To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.  Paragraph 2.2 lists all classes of claimants and their types of claims.

-19-

Why Is Confirmation of a Plan of Reorganization or Liquidation Important? Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of his creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

What Is Necessary to Confirm a Plan of Reorganization or Liquidation? Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

Am I Entitled to Vote on the Plan? Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

How Do I Determine Whether I Am in an Impaired Class? Paragraph 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

When Is the Deadline by Which I Need to Return My Ballot? The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is ▒▒▒▒▒▒▒▒▒▒. Ballots should be mailed to the following address:

Jerrold S. Kulback, Esquire
Archer & Greiner, P.C.
Three Logan Square, 35th Floor
1717 Arch Street
Philadelphia, PA 19103

How Do I Determine When and How Much I Will Be Paid? In Paragraph 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

**ARTICLE 9**
**DEFINITIONS.**

**9.1**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2    5 Nottingham Way Property**: The real estate and all improvements located at 5 Nottingham Way, Blackwood, NJ 08012.

**9.3    5 Samantha Court Property**: The real estate and all improvements located at 5 Samantha Court, Sewell, NJ 08080.

**9.4    13 Raintree Drive Property**: The real estate and all improvements located at 13 Raintree Drive, Sicklerville, NJ 08081.

**9.5    170 Hurffville-Crosskeys Road Property**: The real estate and all improvements located at 170 Hurffville-Crosskeys Road, Sewell, NJ 08080.

**9.6    A&G**: Archer & Greiner, A Professional Corporation, counsel for the Debtor

**9.7    Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.8    Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor under Chapter 123, Title 28, United States Code.

**9.9    Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.10    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.11    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.12    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.13    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets,

credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.14    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.15    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.16    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.17    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.18    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which David Ristick is the Debtor-in-Possession.

**9.19    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.20    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.21    Committee**: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

**9.22    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Combined Plan and Disclosure Statement.

**9.23    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.24    Confirmation Hearing**: The hearing to be held on ▨▨▨, 2019 to consider confirmation of the Plan.

**9.25    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.26    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.27    Curchin**: The Curchin Group, LLC, accountants for the Debtor.

**9.28    Debtor and Debtor-in-Possession**: David Ristick, the debtor-in-possession in this Chapter 11 Case.

**9.29    Disclosure Statement**: The Disclosure Statement served by the Plan Proponent in connection with this Plan.

**9.30    Disputed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.31    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.32    Effective Date**: The date upon which the sale of the 170 Hurffville-Crosskeys Road property closes, which is anticipate to be 30 days after entry of the Confirmation Order.

**9.33    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.34    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.35    IRC**: The Internal Revenue Code

**9.36    Petition Date**: May 3, 2017, the date the chapter 11 petition for relief was filed.

**9.37    Plan**: This Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, or modified from time to time.

**9.38    Plan Proponent**: The individual or entity that has filed this Combined Plan and Disclosure Statement.

**9.39    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.40    Reorganized Debtor**: The Debtor after the Effective Date.

**9.41    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.42    Secured Creditor**: Any Creditor that holds a Claim that is secured by property of the Debtor.

**9.43    Settlement Agreement**:  The Settlement Agreement entered into as of January 2, 2019, between the debtor and TCA Global Credit Master Fund, LP.

**9.44    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

Dated:  March 15, 2019                          By:  _/s/ Jerrold S. Kulback_
                                                          Jerrold S. Kulback
                                                          ARCHER & GREINER
                                                          A Professional Corporation
                                                          Three Logan Square, 35th Floor
                                                          1717 Arch Street
                                                          Philadelphia, PA 19103
                                                          Phone:  (215) 246-3162
                                                          Fax:  (215) 963-9999
                                                          Attorneys for Debtor

215760483v1

-24-

## TABLE OF CONTENTS

**Page**

9.27    Curchin............................................................................................. 23

9.28    Debtor and Debtor-in-Possession ..................................................... 23

9.29    Disclosure Statement. ....................................................................... 23

9.30    Disputed Claim. ................................................................................ 23

9.31    Distributions...................................................................................... 23

9.32    Effective Date ................................................................................... 23

9.33    Executory Contracts.......................................................................... 23

9.34    Final Order. ....................................................................................... 23

9.35    IRC .................................................................................................... 23

9.36    Petition Date...................................................................................... 23

9.37    Plan .................................................................................................... 23

9.38    Plan Proponent .................................................................................. 23

9.39    Priority Tax Claim ............................................................................ 23

9.40    Reorganized Debtor .......................................................................... 23

9.41    Schedules. ......................................................................................... 23

9.42    Secured Creditor ............................................................................... 23

9.43    Unsecured Creditor ........................................................................... 24

# EXHIBIT "A"

**David Ristick, Debtor**
**Chapter 11, Case No. 17-19196 (ABA)**

## LIQUIDATION ANALYSIS

| Assets | Liquidation Value | Source of Value | Secured Claims and Other Deductions/Exemptions | Equity |
|---|---|---|---|---|
| **Real Estate** | | | | |
| 13 Raintree Drive[1] | $205,000.00 | CMA | 1st Mortgage - Nationstar Mortgage - $219,465.56 (per POC) 10% Costs of Sale - $20,500.00 | $0.00 |
| 5 Nottingham Way | $195,000.00 | Realtor | 1st Mortgage - Ditech Financial - $165,038.35 (per counsel) 10% Costs of Sale - $19,500.00 | $10,461.65 |
| 5 Samantha Court | $414,900.00 | CMA | 1st Mortgage – Ocean First Bank - $494,917.57 (per POC) Real Estate Taxes – $33,053.86 (a/o 01/04/19) 10% Costs of Closing - $41,490.00 | $0.00 |
| 170 Hurffville-Crosskeys Road | $239,900.00 | Realtor[2] | Real Estate Taxes – $14,872.93 (a/o 03/15/19) Real Estate Tax Lien – Gila Group, LLC - $8,795.97 (a/o 01/04/19) 10% Costs of Sale - $23,990 | $192,241.10 |
| **Vehicles** | | | | |
| 2015 Cadillac Escalade | $0.00 | Vehicle repossessed | 1st Lien - JPMorgan Chase Bank, N.A. - $81,358.30 (per POC) | $0.00 |
| 2013 Chev. Suburban | $12,675.00 | NADA | 1st Lien – Ally Capital - $6,024.31 (per POC) Exemption – 11 U.S.C. § 522(d)(2) - $3,775.00 10% Costs of Sale - $1,267.50 | $1,608.19 |
| 2016 Chev. Colorado | $0.00 | Vehicle repossessed | 1st Lien – Americredit Financial Services, Inc. - $50,006.01 (per POC) | $0.00 |

[1] Property has been sold at Sheriff's sale
[2] Property appraised for $220,000

1

| Asset | Value | Basis | Liens / Exemptions | Liquidation Value |
|---|---|---|---|---|
| 2015 Chev. Silverado | $18,750.00 | NADA | 1st Lien – Ally Capital - $16,656.83 (per POC) 10% Costs of Sale - $1,875.00 | $218.17 |
| 2013 Chev. Traverse | $21,775.00 | POC | 1st Lien – Santander Consumer USA, Inc. - $30,208.29 (per POC) Vehicle titled in name of Samuel C. Mitchell | $0.00 |
| **Other Assets** | | | | |
| Cash in DIP Account | $94.29 | Jan. 2019 MOR | | $94.29 |
| Kawasaki 750 Brute Force | $2,000 | Estimate | Exemption – 11 U.S.C. § 522(d)(5) - $2,000.00 | $0.00 |
| Household Goods and Furnishings | $2,500 | Estimate | Exemption – 11 U.S.C. § 522(d)(3) - $2,500.00 | $0.00 |
| Electronics and Other Miscellaneous Items | $2,000 | Estimate | Exemption – 11 U.S.C. § 522(d)(3) - $2,500.00 | $0.00 |
| Membership Interests MPI Blackhorse Pike Indigrow, LLC | $1,011.41 | Funds in bank account | Exemption – 11 U.S.C. § 522(d)(5) - $1,011.41 | $0.00 |
| TD Ameritrade Account | $925.16 | Funds in account | Exemption – 11 U.S.C. § 522(d)(5) - $925.16 | $0.00 |
| **Total Assets At Liquidation Value** | | | | **$204,623.40** |
| **Less Chapter 7 Trustee Commission** | | | | ($13,981.00) |
| **Less Chapter 7 Trustee Fees and Expenses (Est.)** | | | | ($25,000.00) |
| **Less Chapter 11 Administrative Expenses** A&G – Approx. $35,000.00 Curchin Group - $2,500.00 | | | | ($37,500.00) |

| | |
|---|---|
| **Less Priority Tax Claims** | |
| Colorado Department of Revenue - $9,697.00 (per POC) | |
| State of New Jersey - $33,145.15 (per POC) | |
| State of New Jersey - $26,500.00[3] (per POC) | |
| Utah State Tax Commission - $2,535.75 (per POC) | ($71,877.90) |
| | |
| **Balance for Allowed Unsecured Creditors** | $56,264.50 |
| **Total Dollar Amount of Unsecured Claims** | $6,170,613.33 |
| **Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation** | 0.91% |
| **Percentage of Claims Which Unsecured Creditors Would Receive or Retain under the Plan** | 1.54% |

213951748v1

3

---

[3] The Debtor is in the process of reviewing this Priority Claim and believes it may be due for taxes *after* the Debtor's interest in MPI was foreclosed.

# EXHIBIT "B"

**David Ristick, Debtor**
**Chapter 11, Case No. 17-19196 (ABA)**

## Schedule of Claims

| Creditor Name | Claim No. | Secured | Priority | Unsecured | Notes |
|---|---|---|---|---|---|
| ADT Security Services | Scheduled | | | $175.65 | |
| Advocare Lerch and Amato Peds | Scheduled | | | $86.00 | |
| Alice Maglio | Scheduled | | | $20,000.00 | |
| Ally Capital | 3 | $6,024.31 | | | Secured by Chev. Suburban |
| Ally Capital | 4 | $16,656.83 | | | Secured by Chev. Silverado |
| American Express Bank FSB | 2 | | | $38,136.91 | |
| Americredit Financial Services, Inc. d/b/a GM Financial | 6 | | | $21,994.76 | Deficiency Claim after repossession of Chev. Colorado |
| Amerihealth Insurance Company of NJ | Scheduled | | | $1,949.04 | |
| Amerihealth Insurance Company of NJ | Scheduled | | | $118.96 | |
| Amerihealth Insurance Company of NJ | Scheduled | | | $42.22 | |
| Amerihealth Insurance Company of NJ | Scheduled | | | $504.16 | |
| Amerihealth Insurance Company of NJ | Scheduled | | | $59.48 | |
| Atlantic City Electric | 11 | | | $2,861.36 | |
| Barclaycard | Scheduled | | | $65,767.92 | |
| Cavalry SPV I, LLC | 19 | | | $2,399.01 | |
| Colorado Department of Revenue | 12 | | | $2,566.00 | |
| Comcast | Scheduled | | $9,697.00 | $640.02 | |
| Ditech Financial LLC f/k/a Green Tree Servicing LLC | 8 | $137,156.08 | | | Secured by 5 Nottingham Way property |
| Gila Group | 9 | $10,978.85 | | | Secured by 170 Hurffville-Crosskeys Road property |
| Harrah's Atlantic City Oper Co | 5 | | | | Withdrawn |
| Harrah's Atlantic City Oper Co | 14 | | | $11,671.23 | |
| IRS | 7 | | | $0.00 | |
| JP Morgan Chase Bank, N.A. | 1 | $81,358.30 | | | Secured by Cadillac Escalade |
| Knight Capital Funding | Scheduled | | | $0.00 | Scheduled as disputed in the sum of $144,241 |
| Laboratory Corporation of America | Scheduled | | | $52.00 | |
| Macy's | Scheduled | | | $645.34 | |
| Nationstar Mortgage LLC | 13 | $219,465.56 | | | Secured by 13 Raintree Drive property |
| New Jersey Skylands Insurance | Scheduled | | | $0.00 | Scheduled as disputed in the sum of $2,000 |
| Northeast Communications Group, Inc. | Scheduled | | | $0.00 | Scheduled as disputed in the sum of $137,062.49 |
| Northwestern Mutual | Scheduled | | | $2,529.44 | |
| Ocean First Bank/WSFS/Kondaur Capital | 21 | $494,917.57 | | | Secured by 5 Samantha Court property |
| QuarterSpot | Scheduled | | | $0.00 | Scheduled as disputed in the sum of $89,789 |
| Santander Consumer USA | 10 | $30,208.29 | | | Secured by Chev. Traverse |
| South Jersey Adjustment Bureau | Scheduled | | | $0.00 | Scheduled as disputed in the sum of $4,683.29 |
| South Jersey Gas | Scheduled | | | $165.82 | |
| South Jersey Gas | Scheduled | | | $901.95 | |
| South Jersey Gas | Scheduled | | | $135.60 | |
| State of NJ Division of Taxation | 17 | | $33,145.15 | $9,617.66 | |
| State of NJ Division of Taxation | 18 | | $26,500.00 | $2,082.00 | |
| Synchrony Bank | Scheduled | | | $515.60 | |
| TCA Global Credit Master Fund LP | 16 | | | $5,227,940.09 | MPI Tax Liabilities after Debtor's interest taken |
| Utah State Tax Commission | 20 | | $2,535.75 | $302.95 | |
| Verizon | Scheduled | | | | |
| Vermeer | 15 | | | $756,752.16 | |
| **TOTALS** | | **$996,765.79** | **$71,877.90** | **$6,170,613.33** | |

# EXHIBIT "C"

### UNITED STATES BANKRUPTCY COURT
_____ DISTRICT OF _____                                    NEW JERSEY

IN RE DAVID RISTICK                          Case No. _____ 17-19196
                                             Reporting Period: 01/01/2019-01/31/2019

### MONTHLY OPERATING REPORT
### (INDIVIDUAL WAGE EARNERS)
File with Court and submit copy to United States Trustee within 20 days after end of month

Include FORM MOR-1 (INDV) if debtor is a wage earner.
Substitute FORM MOR-2 (RE) for MOR-2 if case is a Single Asset Real Estate case.
Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 (INDV) | yes | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | yes | |
| Copies of bank statements | | yes | |
| Cash disbursements journals | | | |
| Statement of Operations | | | |
| Balance Sheet | | | |
| Status of Postpetition Taxes | | | |
| Copies of IRS Form 6123 or payment receipt | | | |
| Copies of tax returns filed during reporting period | | | |
| Summary of Unpaid Postpetition Debts | | | |
| Listing of aged accounts payable | | | |
| Accounts Receivable Reconciliation and Aging | | | |
| Debtor Questionnaire | | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that the documents attached to this report
are true and correct to the best of my knowledge and belief.

_____                    02/12/19
Signature of Debtor                                Date


_____                    Date
Signature of Joint Debtor


_____                    Date
Signature of Authorized Individual*


_____                    _____
Printed Name of Authorized Individual              Title of Authorized Individual


*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR (INDV)
(9/99)

In re: __DAVID RISTICK_____
                Debtor

Case No. __17-19196_____
Reporting Period __0 01/01/2019-01/31/2019

## INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS
( This Form must be submitted for each Bank Account maintained by the Debtor)

Amounts reported should be per the debtor's books, not the bank statement. The beginning cash should be the ending cash from the prior month or, if this is the first report, the amount should be the balance on the date the petition was filed. Attach the bank statements and a detailed list of all disbursements made during the report period that includes the date, the check number, the payee, the transaction description, and the amount. A bank reconciliation must be attached for each account. [See MOR-1 (INDV) (CON'T)]

| | Current Month Actual | Cumulative Filing to Date Actual |
|---|---|---|
| **Cash - Beginning of Month** | 2,452.47 | 2,452.47 |
| | | |
| **RECEIPTS** | | |
| Wages (Net) | 0.00 | 57,845.36 |
| Interest and Dividend Income | | |
| Alimony and Child Support | | |
| Social Security and Pension Income | | |
| Sale of Assets | | |
| Other Income (attach schedule) | 2,829.00 | 88,554.44 |
| **Total Receipts** | 2,829.00 | 146,399.80 |
| | | |
| **DISBURSEMENTS** | | |
| **ORDINARY ITEMS:** | | |
| Mortgage Payment(s) | | |
| Rental Payment(s) | | |
| Other Secured Note Payments | | |
| Utilities | | 18,973.05 |
| Insurance | 80.43 | 3,448.19 |
| Auto Expense | 309.27 | 5,667.20 |
| Lease Payments | | |
| IRA Contributions | | 20,053.37 |
| Repairs and Maintenance | | |
| Medical Expenses | 233.65 | 1,202.85 |
| Household Expenses | 3,436.66 | 83,925.42 |
| Charitable Contributions | | |
| Alimony and Child Support Payments | | |
| Taxes - Real Estate | | |
| Taxes - Personal Property | | |
| Taxes - Other (attach schedule) | | 46.47 |
| Travel and Entertainment | 1,127.17 | 5,255.41 |
| Gifts | | 105.19 |
| reimbursible business expenses | | 6,650.69 |
| Total Ordinary Disbursements | 5,187.18 | 145,327.84 |
| **REORGANIZATION ITEMS:** | | |
| Professional Fees | | |
| U. S. Trustee Fees | | 975 |
| Other Reorganization Expenses (attach schedule) | | |
| Total Reorganization Items | | 975 |
| | | |
| **Total Disbursements (Ordinary + Reorganization)** | | 146302.84 |
| | | |
| **Net Cash Flow (Total Receipts - Total Disbursements)** | | -2358.18 |
| | | |
| **Cash - End of Month (Must equal reconciled bank statement)** | | 94.29 |

FORM MOR-1(INDV)
(9/99)

In re__DAVID RISTICK_____    Case No.___17-19196_____
Debtor    01/01/2019-01/31/2019

### INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS - continuation sheet

| BREAKDOWN OF "OTHER" CATEGORY | Current Month Actual | Cumulative Filing to Date Actual |
|---|---|---|
| **Other Income** | | |
| old account | 0.00 | 200.00 |
| BOUNCED PAYMENTS | | 439.31 |
| TAX REFUND | | 1,059.00 |
| STORE REFUND | 100.23 | 725.80 |
| INSURANCE REFUND | | 44,950.25 |
| CORRECTION | | 93.58 |
| GIFT | | 14,933.00 |
| UNEMPLOYMENT | 3,405.00 | 14,982.00 |
| TRAVEL EXPENSE REIMBURSEMENT | | 5,004.14 |
| **Other Taxes** | | |
| | | |
| | | |
| | | |
| | | |
| **Other Ordinary Disbursements** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Reorganization Expenses** | | |
| | | |
| | | |
| | | |
| | | |

FORM MOR-1 (INDV) (CON'T)
(9/99)

DAVID RISTICK BANK RECONCILIATION

1/31/2019

| | |
|---|---|
| beginning balance | 2,452.47 |
| total deposits | 2,829.00 |
| total withdrawals | 5,187.18 |
| | |
| ending balance | 94.29 |
| outstanding checks | |
| register balance | 94.29 |

(b)

# New Jersey Internet Application for Claiming Weekly Unemployment Insurance Benefits

| | | | |
|---|---|---|---|
| Claimant ID: | 003558489 | Date of Unemployment Claim: | 07/22/2018 |
| Current Date: | 01/06/2019 | Weekly Benefit Rate: | $681 |

**\*Email:**

### Updated Claim Information

| | | | |
|---|---|---|---|
| Gross Amount of Payment: | $681 | Payment for week ending: | 01/05/2019 |
| Earnings: | $0 | | |
| Pension: | $0 | Claim Balance after Payment: | $1,362 |
| Refund: | $0 | Refund Balance after Payment: | $0 |
| Garnishment: | $0 | Tax Withheld so far this year: | $0 |
| Tax Withheld: | $0 | | |
| Net Amount of Payment: | $681 | | |

Your claim for unemployment insurance benefits has been received.

Your confirmation number is 19006160301852. Please write down this number or print this message, in case you need to contact a Reemployment Call Center about this certification.

**\*If an email address is displayed above,** a confirmation of this transaction will be sent to that email address.

If it is determined that you are eligible for benefits, you will receive a second email when your payment has been sent to the bank for deposit into your **_direct deposit_** account.

If you do not receive any emails, please check your SPAM/JUNK folder and the accuracy of the email address listed above.If you wish to add or correct your email address, you can do so the next

CERT Application - Confirmation

time you claim your weekly benefits online.

| Print this Page | Exit |

(b)

# New Jersey Internet Application for Claiming Weekly Unemployment Insurance Benefits

Claimant ID: 003558489 Date of Unemployment Claim: 07/22/2018

Current Date: 01/13/2019 Weekly Benefit Rate: $681

**\*Email:**

### Updated Claim Information

| | | | |
|---|---|---|---|
| Gross Amount of Payment: | $681 | Payment for week ending: | 01/12/2019 |
| Earnings: | $0 | | |
| Pension: | $0 | Claim Balance after Payment: | $681 |
| Refund: | $0 | Refund Balance after Payment: | $0 |
| Garnishment: | $0 | Tax Withheld so far this year: | $0 |
| Tax Withheld: | $0 | | |
| Net Amount of Payment: | $681 | | |

Your claim for unemployment insurance benefits has been received.

Your confirmation number is 19013114555045. Please write down this number or print this message, in case you need to contact a Reemployment Call Center about this certification.

**\*If an email address is displayed above,** a confirmation of this transaction will be sent to that email address.

If it is determined that you are eligible for benefits, you will receive a second email when your payment has been sent to the bank for deposit into your ***direct deposit*** account.

If you do not receive any emails, please check your SPAM/JUNK folder and the accuracy of the email address listed above. If you wish to add or correct your email address, you can do so the next

time you claim your weekly benefits online.

| Print this Page | | Exit |

(b)

# New Jersey Internet Application for Claiming Weekly Unemployment Insurance Benefits

Claimant ID:     003558489  Date of Unemployment Claim: 07/22/2018

Current Date:    01/20/2019  Weekly Benefit Rate:  $681

**\*Email:**

### Updated Claim Information

| | | | |
|---|---|---|---|
| Gross Amount of Payment: | $681 | Payment for week ending: | 01/19/2019 |
| Earnings: | $0 | | |
| Pension: | $0 | Claim Balance after Payment: | $0 |
| Refund: | $0 | Refund Balance after Payment: | $0 |
| Garnishment: | $0 | Tax Withheld so far this year: | $0 |
| Tax Withheld: | $0 | BENEFITS EXHAUSTED | |
| Net Amount of Payment: | $681 | | |

Your claim for unemployment insurance benefits has been received.

Your confirmation number is 19020112157079. Please write down this number or print this message, in case you need to contact a Reemployment Call Center about this certification.

**\*If an email address is displayed above,** a confirmation of this transaction will be sent to that email address.

If it is determined that you are eligible for benefits, you will receive a second email when your payment has been sent to the bank for deposit into your **_direct deposit_** account.

If you do not receive any emails, please check your SPAM/JUNK folder and the accuracy of the email address listed above.If you

wish to add or correct your email address, you can do so the next
time you claim your weekly benefits online.

| Print this Page | | Exit |



## Bank
### America's Most Convenient Bank®

T        STATEMENT OF ACCOUNT

DAVID RISTICK
DIP CASE 17-19196   DIST NJ
5 NOTTINGHAM WAY
TURNERSVILLE   NJ  08012

Page:                                          1 of 5
Statement   Period:      Dec 24 2018-Jan   23 2019
Cust Ref #:
Primary   Account   #: 

Chapter   11  Checking
DAVID RISTICK
DIP CASE 17-19196 DIST NJ

Account

### ACCOUNT SUMMARY

| | | |
|---|---|---|
| Beginning  Balance | 1,235.43 | |
| Electronic  Deposits | 4,767.00 | |
| Electronic   Payments | 5,138.97 | |
| Other  Withdrawals | 60.00 | |
| Ending   Balance | 803.46 | |

| | |
|---|---|
| Average   Collected   Balance | 978.82 |
| Interest   Earned This  Period | 0.00 |
| Interest   Paid  Year-to-Date | 0.00 |
| Annual   Percentage   Yield  Earned | 0.00% |
| Days   in Period | 31 |

| | Total  for this  Period | Total  Prior  Year |
|---|---|---|
| Total  Overdraft  Fees | $0.00 | $70.00 |
| Total  Returned   Item Fees  (NSF) | $0.00 | $385.00 |

### DAILY ACCOUNT ACTIVITY

Electronic     Deposits

| POSTING DATE | DESCRIPTION | | | AMOUNT |
|---|---|---|---|---|
| 12/31 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| 12/31 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| 12/31 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| 01/02 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| 01/08 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| 01/15 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| 01/22 | ACH  DEPOSIT,   STATE   OF  NJ - LA UEMPLOYMEN | ****58489 | | 681.00 |
| | | | Subtotal: | 4,767.00 |

Electronic   Payments

| POSTING DATE | DESCRIPTION | | | AMOUNT |
|---|---|---|---|---|
| 12/24 | DEBIT  CARD  PURCHASE,   *****30030829105,    AUT  122218   VISA  DDA  PUR     61499  AMTRAK   SHOR   PHILADELPHIA   * PA | | | 210.00 |
| 12/24 | DEBIT  POS,   *****30030829105,    AUT  122218   DDA  PURCHASE     NJT  NWK  INT AIR  0359   NEWARK    * NJ | | | 52.00 |
| 12/24 | DEBIT  CARD  PURCHASE,   *****30030829105,    AUT  122018   VISA  DDA  PUR     GAP  ONLINE      800  4277895   * OH | | | 47.00 |
| 12/24 | DEBIT  CARD  PURCHASE,   *****30030829105,    AUT  122018   VISA  DDA  PUR     PIZZA  BOX  TURNERSVILLE    TURNERSVILLE   * NJ | | | 37.87 |
| 12/24 | DEBIT  CARD  PURCHASE,   *****30030829105,    AUT  122218   VISA  DDA  PUR     MACYS   COM    MASON    * OH | | | 16.00 |
| 12/26 | DEBIT  CARD  PURCHASE,   *****30030829105,    AUT  122418   VISA  DDA  PUR     DOMINO  S 4562     856  931  4100   * NJ | | | 55.57 |

Call   1-800-937-2000     for   24-hour     Bank-by-Phone     services   or   connect   to   www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N. A. | Equal Housing Lender

How    to    Balance    your    Account

Page:    2 of 5

Begin by adjusting your account register as follows:

fi Subtract any services charges shown on this statement.

fi Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

fi Add any interest earned if you have an interest-bearing account.

fi Add any automatic deposit or overdraft line of credit.

fi Review all withdrawals shown on this statement and check them off in your account register.

fi Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| ❶ Ending Balance | 803.46 |
| ❷ Total Deposits | + |
| ❸ Sub Total | |
| ❹ Total Withdrawals | |
| ❺ Adjusted Balance | |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| Total Deposits | | |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| Total Withdrawals | | ❹ |

FOR CONSUMER ACCOUNTS ONLY    IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:

If you need information about an electronic funds transfer or if you believe there is an error on your bank statement or receipt relating to an electronic funds transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

fi Your name and account number.
fi A description of the error or transaction you are unsure about.
fi The dollar amount and date of the suspected error.

When making a verbal inquiry the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error so that you have the use of the money during the time it takes to complete our investigation.

INTEREST NOTICE:

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

FOR CONSUMER LOAN ACCOUNTS ONLY    BILLING RIGHTS SUMMARY

In case of Errors or Questions About your Bill:

If you think your bill is wrong or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST Bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter give us the following information:

fi Your name and account number.
fi The dollar amount of the suspected error.
fi Describe the error and explain if you can, why you believe there is an error. If you need more information describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question you cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGE: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to occur on the date advance and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge multiply the Average Daily Balance times the Days in Periodic times the Daily Periodic Rate (as listed in the Account summary section of the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle then dividing the total balance by the number of Days in the Billing Cycle. The daily balances on the balance for the day after advances have been added and payment or credits have been subtracted plus or minus any other adjustment that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.



**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

DAVID RISTICK
DIP CASE 17-19196   DIST NJ



| | |
|---|---|
| Page: | 3 of 5 |
| Statement Period: | Dec 24 2018-Jan 23 2019 |
| Cust Ref #: | |
| Primary Account #: | |

## DAILY ACCOUNT ACTIVITY

**Electronic Payments (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/26 | DEBIT POS, *****30030829105, AUT 122518 DDA PURCHASE WAWA 499 SEWELL * NJ | 16.98 |
| 12/28 | DEBIT CARD PURCHASE, *****30030829105, AUT 122718 VISA DDA PUR COMCAST 800 COMCAST * NJ | 300.25 |
| 12/28 | DEBIT CARD PURCHASE, *****30030829105, AUT 122618 VISA DDA PUR FANDANGO COM FANDANGO COM * CA | 57.50 |
| 12/31 | DEBIT CARD PURCHASE, *****30030829105, AUT 122918 VISA DDA PUR SQ GINNY S COOKIES WOODBURY * NJ | 25.28 |
| 12/31 | DEBIT CARD PURCHASE, *****30030829105, AUT 122918 VISA DDA PUR AUNTIE ANNE S NJ109 DEPTFORD * NJ | 7.51 |
| 01/02 | TD ATM DEBIT, *****30030829105, AUT 010119 DDA WITHDRAW 284 EGG HARBOR ROAD SEWELL * NJ | 400.00 |
| 01/02 | DEBIT CARD PURCHASE, *****30030829105, AUT 123118 VISA DDA PUR NJMVC TURNERSVILLE TURNERSVILLE * NJ | 71.50 |
| 01/02 | DEBIT CARD PURCHASE, *****30030829105, AUT 010119 VISA DDA PUR GAS STOP SEWELL * NJ | 42.77 |
| 01/02 | DEBIT CARD PAYMENT, *****30030829105, AUT 010119 VISA DDA PUR APL ITUNES COM BILL 800 275 2273 * CA | 2.99 |
| 01/03 | TD ATM DEBIT, *****30030829105, AUT 010219 DDA WITHDRAW 284 EGG HARBOR ROAD SEWELL * NJ | 400.00 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010319 VISA DDA PUR CARMINE S ATLANTIC CITY * NJ | 390.94 |
| 01/04 | ACH DEBIT, NORTHWESTERN MU ISA PAYMNT ****136-01 | 80.43 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010219 VISA DDA PUR AMAZON COM M22F29KF2 AMZN COM BILL * WA | 69.78 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010219 VISA DDA PUR AMZN MKTP US M23MV0252 AMZN COM BILL * WA | 60.75 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010219 VISA DDA PUR AMZN MKTP US M207K0252 AMZN COM BILL * WA | 53.30 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010319 VISA DDA PUR AMZN MKTP US M25FL9KD2 AMZN COM BILL * WA | 36.13 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010319 VISA DDA PUR AMAZON COM M26Z29KY2 AMZN COM BILL * WA | 22.99 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010319 VISA DDA PUR AMAZON COM MB1BU1OH1 AMZN COM BILL * WA | 22.99 |
| 01/04 | DEBIT CARD PURCHASE, *****30030829105, AUT 010319 VISA DDA PUR AMZN MKTP US MB1BU2OH1 AMZN COM BILL * WA | 20.81 |
| 01/07 | DEBIT CARD PURCHASE, *****30030829105, AUT 010519 VISA DDA PUR SPIRIT AIRL 487019518393 800 7727117 * FL | 394.74 |
| 01/07 | DEBIT CARD PURCHASE, *****30030829105, AUT 010419 VISA DDA PUR SQ CHILDRENS DENTAL ASS GLOUCESTER TO * NJ | 200.00 |
| 01/07 | DEBIT CARD PURCHASE, *****30030829105, AUT 010319 VISA DDA PUR AMZN MKTP US MB0AA54J0 AMZN COM BILL * WA | 90.63 |



**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

DAVID RISTICK
DIP CASE 17-19196   DIST NJ

| | | |
|---|---|---|
| Page: | | 4 of 5 |
| Statement Period: | Dec 24 2018-Jan 23 2019 | |
| Cust Ref #: | | |
| Primary Account #: | | |



---

## DAILY ACCOUNT ACTIVITY

Electronic    Payments    (continued)

| POSTING DATE | DESCRIPTION | | | AMOUNT |
|---|---|---|---|---|
| | | | | 84.00 |
| 01/07 | DEBIT CARD PURCHASE, *****30030829105, AUT 010519 VISA DDA PUR SPIRIT TRAVEL GUARD 800 826 1300 * WI | | | |
| 01/07 | DEBIT CARD PURCHASE, *****30030829105, AUT 010519 VISA DDA PUR SPIRIT AIRL 487019517936 800 7727117 * FL | | | 59.95 |
| 01/07 | DEBIT CARD PAYMENT, *****30030829105, AUT 010419 VISA DDA PUR APL ITUNES COM BILL 800 275 2273 * CA | | | 26.65 |
| 01/07 | DEBIT CARD PAYMENT, *****30030829105, AUT 010419 VISA DDA PUR APL ITUNES COM BILL 800 275 2273 * CA | | | 14.99 |
| 01/07 | DEBIT CARD PURCHASE, *****30030829105, AUT 010419 VISA DDA PUR APL ITUNES COM BILL 866 712 7753 * CA | | | 1.06 |
| 01/08 | DEBIT CARD PURCHASE, *****30030829105, AUT 010619 VISA DDA PUR BLUCIGS 888 207 4588 * NC | | | 107.32 |
| 01/09 | DEBIT CARD PURCHASE, *****30030829105, AUT 010419 VISA DDA PUR CALVINKLEIN COM 866 513 0513 * NJ | | | 39.92 |
| 01/10 | DEBIT CARD PURCHASE, *****30030829105, AUT 010819 VISA DDA PUR AMZN MKTP US MB5G38JC0 AMZN COM BILL * WA | | | 79.98 |
| 01/10 | DEBIT POS, *****30030829105, AUT 011019 DDA PURCHASE SHOPRITE WSHNGTNTWP S1 SEWELL * NJ | | | 42.15 |
| 01/10 | DEBIT POS, *****30030829105, AUT 010919 DDA PURCHASE CVS PHARM 00362 288 E SEWELL * NJ | | | 33.65 |
| 01/10 | DEBIT CARD PAYMENT, *****30030829105, AUT 010919 VISA DDA PUR SXM SIRIUSXM COM ACCT 888 635 5144 * NY | | | 26.66 |
| 01/10 | DEBIT CARD PURCHASE, *****30030829105, AUT 010919 VISA DDA PUR PIZZA ZEPPOLE DEPTFORD * NJ | | | 9.70 |
| 01/10 | DEBIT CARD PURCHASE, *****30030829105, AUT 010919 VISA DDA PUR CALIFORNIA SHAKES JUIC DEPTFORD * NJ | | | 5.86 |
| 01/10 | DEBIT CARD PURCHASE, *****30030829105, AUT 010919 VISA DDA PUR CALIFORNIA SHAKES JUIC DEPTFORD * NJ | | | 5.86 |
| 01/10 | DEBIT CARD PURCHASE, *****30030829105, AUT 010919 VISA DDA PUR SQ GINNY S COOKIES WOODBURY * NJ | | | 5.03 |
| 01/11 | TD ATM DEBIT, *****30030829105, AUT 011119 DDA WITHDRAW 284 EGG HARBOR ROAD SEWELL * NJ | | | 400.00 |
| 01/14 | DEBIT CARD PURCHASE, *****30030829105, AUT 011119 VISA DDA PUR NJMVC TURNERSVILLE TURNERSVILLE * NJ | | | 195.00 |
| 01/14 | DEBIT POS, *****30030829105, AUT 011219 DDA PURCHASE WAWA 981 SICKLERVILLE * NJ | | | 56.88 |
| 01/14 | DEBIT CARD PURCHASE, *****30030829105, AUT 011219 VISA DDA PUR SPIRIT AIRL 487019578623 MIRAMAR * FL | | | 30.00 |
| 01/14 | DEBIT CARD PURCHASE, *****30030829105, AUT 011119 VISA DDA PUR UBER EATS HELP UBER COM * CA | | | 5.43 |
| 01/15 | DEBIT POS, *****30030829105, AUT 011519 DDA PURCHASE WM SUPERC WAL MART SUP KISSIMMEE * FL | | | 110.09 |
| 01/15 | DEBIT CARD PURCHASE, *****30030829105, AUT 011419 VISA DDA PUR APL ITUNES COM BILL 866 712 7753 * CA | | | 26.63 |

---

Call   1-800-937-2000   for 24-hour   Bank-by-Phone   services   or   connect   to   www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N.A | Equal Housing Lender



STATEMENT OF ACCOUNT

**America's Most Convenient Bank®**

DAVID RISTICK
DIP CASE 17-19196    DIST NJ

| | |
|---|---|
| Page: | 5 of 5 |
| Statement Period: | Dec 24 2018-Jan 23 2019 |
| Cust Ref #: | |
| Primary Account #: |  |

---

## DAILY ACCOUNT ACTIVITY

**Electronic Payments** (continued)

| POSTING DATE | DESCRIPTION | | | | AMOUNT |
|---|---|---|---|---|---|
| 01/16 | DEBIT CARD PURCHASE, VISTANA TOUR DEPOSIT | ****30030829105, ORLANDO | AUT 011219 * FL | VISA DDA PUR | 20.00 |
| 01/18 | DEBIT CARD PAYMENT, AMAZON PRIME | ****30030829105, AMZN COM BILL * WA | AUT 011719 | VISA DDA PUR | 13.85 |
| 01/22 | DEBIT CARD PURCHASE, DISNEY TICKETS DWTN | ****30030829105, LAKE BUENA VI * FL | AUT 011819 | VISA DDA PUR | 258.00 |
| 01/22 | DEBIT CARD PURCHASE, CASTLE COUTURE | ****30030829105, LAKE BUENA VI * FL | AUT 011919 | VISA DDA PUR | 141.38 |
| 01/22 | DEBIT CARD PAYMENT, DIS WDW PASS PAYMENT | ****30030829105, 888 701 4100 * CA | AUT 011919 | VISA DDA PUR | 129.20 |
| 01/22 | DEBIT CARD PURCHASE, UBER EATS | ****30030829105, HELP UBER COM * CA | AUT 012119 | VISA DDA PUR | 13.12 |
| 01/22 | DEBIT CARD PURCHASE, SPRINKLES 020 | ****30030829105, 310 657 4102 * FL | AUT 011819 | VISA DDA PUR | 9.90 |
| | | | | Subtotal: | 5,138.97 |

---

**Other Withdrawals**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/09 | DEBIT | 60.00 |
| | Subtotal: | 60.00 |

---

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 12/23 | 1,235.43 | 01/08 | 1,159.75 |
| 12/24 | 872.56 | 01/09 | 1,059.83 |
| 12/26 | 800.01 | 01/10 | 850.94 |
| 12/28 | 442.26 | 01/11 | 450.94 |
| 12/31 | 2,452.47 | 01/14 | 163.63 |
| 01/02 | 2,616.21 | 01/15 | 707.91 |
| 01/03 | 2,216.21 | 01/16 | 687.91 |
| 01/04 | 1,458.09 | 01/18 | 674.06 |
| 01/07 | 586.07 | 01/22 | 803.46 |

---

Call   1-800-937-2000    for   24-hour    Bank-by-Phone    services    or    connect    to    www.tdbank.com

Bank Deposits FDIC Insured TD Bank N A | Equal Housing Lender



**Bank**

America's Most Convenient Bank®

DAVID RISTICK
DIP CASE 17-19196 DIST NJ
5 NOTTINGHAM WAY
TURNERSVILLE NJ          08012

039 / Chapter 11 Checking    

| | | |
|---|---|---|
| Statement Beginning Balance As Of 1/24/2019 | | $803.46 |
| Plus | Deposits and Other Credits | $105.00 |
| Less    13 | Checks and Other Debits | $814.17 |
| Statement Balance As Of 02/01/2019 | | $94.29 |

## Transactions By Date

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| | | | | $555.75 |
| 01/24/2019 | VISA DDA PUR 443106    ST FANTASMIC FO | $47.73 | | $555.73 |
| 01/28/2019 | DDA WITHDRAW PM3679    2700 SICKLER | $200.00 | | $371.94 |
| 01/28/2019 | DDA PURCHASE 403482    SHOPRITE WSHN | $183.79 | | $371.94 |
| 01/28/2019 | DDA PURCHASE 403482    SHOPRITE WSHN | $68.52 | | $303.42 |
| 01/28/2019 | DDA PURCHASE 01482001    WAWA 981 | $43.20 | | $260.22 |
| 01/28/2019 | VISA DDA PUR 449215    UBER  EATS | $23.02 | | $237.20 |
| 01/28/2019 | VISA DDA PUR 449215    UBER  EATS 2BGE | $4.00 | | $233.20 |
| 01/28/2019 | VISA DDA PUR 444500    4562 DOMINOS PIZ | $25.01 | | $208.19 |
| 01/29/2019 | VISA DDA PUR 449215    UBER  EATS | $13.43 | | $194.76 |
| 01/29/2019 | VISA DDA PUR 449215    UBER  EATS CGEW | $4.00 | | $190.76 |
| 01/30/2019 | ATM CASH DEPOSIT TW04B095  284 EGG H | | $105.00 | $295.76 |
| 01/30/2019 | VISA DDA PUR 469216    SHOPRITE WASHIN | $133.61 | | $162.15 |
| 01/31/2019 | VISA DDA PUR 449215    UBER  EATS | $63.86 | | $98.29 |
| 01/31/2019 | VISA DDA PUR 449215    UBER  EATS 2YFD | $4.00 | | $94.29 |

Page 1 of 1