UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
_____

Caption in Compliance with D.N.J. LBR 9004-2(c)

JERROLD S. KULBACK, ESQUIRE
ARCHER & GREINER
A Professional Corporation
Three Logan Square, 35th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone:  (215) 246-3162
Fax:  (215) 963-9999
E-mail: jkulback@archerlaw.com
*Attorneys for Debtor*

| | |
|---|---|
| In Re: | Chapter 11 |
| DAVID RISTICK, | Case No. 17-19196 (ABA) |
| Debtor. | |

## **PLAN OF LIQUIDATION**

David Ristick respectfully submits this Plan of Liquidation pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

Respectfully submitted,

Dated:  April 18, 2019

/s/  David Ristick    .
DAVID RISTICK

# TABLE OF CONTENTS

I.  **INTRODUCTION** ...........................................................................................................1

II. **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............1

    A.  **General Overview** .............................................................................................1
    B.  **Definitions** .........................................................................................................1
        1.  "5 Nottingham Way Property" .................................................................1
        2.  "5 Samantha Court Property" ...................................................................1
        3.  "13 Raintree Drive Property" ...................................................................1
        4.  "170 Hurffville-Crosskeys Road Property" .............................................2
        5.  "A&G" .......................................................................................................2
        6.  "Administrative Expense" ........................................................................2
        7.  "Allowed" .................................................................................................2
        8.  "Allowed Administrative Expense" ..........................................................3
        9.  "Allowed Unsecured Claim" ....................................................................3
        10. "Bankruptcy Case" ...................................................................................3
        11. "Bankruptcy Code" ..................................................................................3
        12. "Bankruptcy Court" ..................................................................................3
        13. "Bankruptcy Rules" ..................................................................................3
        14. "Business Day" .........................................................................................3
        15. "Claim" .....................................................................................................4
        16. "Class" ......................................................................................................4
        17. "Code" .......................................................................................................4
        18. "Confirmation" .........................................................................................4
        19. "Confirmation Hearing" ...........................................................................4
        20. "Confirmation Order" ...............................................................................4
        21. "Creditor" .................................................................................................4
        22. "Debt" .......................................................................................................5
        23. "Debtor" ....................................................................................................5
        24. "Disbursing Agent" ..................................................................................5
        25. "Disclosure Statement" .............................................................................5
        26. "Effective Date" .......................................................................................5
        27. "Equity Interest Holder" ...........................................................................5
        28. "Equity Interest" .......................................................................................5
        29. "Estate" .....................................................................................................5
        30. "Final Order" ............................................................................................5
        31. "Impaired" ................................................................................................6
        32. "Person" ....................................................................................................6
        33. "Petition Date" .........................................................................................6
        34. "Plan" .......................................................................................................6
        35. "Priority Non-Tax Claim" ........................................................................6
        36. "Priority Tax Creditor" .............................................................................6
        37. "Priority Tax Claim" .................................................................................6
        38. "Proceeding" ............................................................................................6
        39. "Professional Persons" .............................................................................6

|  | 40. | "Professional Fees" | 7 |
|  | 41. | "Proponent" | 7 |
|  | 42. | "Reorganized Debtor" | 7 |
|  | 43. | "Secured Claim" | 7 |
|  | 44. | "Unsecured Claim" | 7 |
| **C.** | **Unclassified Claims** | | 8 |
|  | 1. | Administrative Expenses and Fees | 8 |
|  | 2. | Priority Tax Claims | 10 |
| **D.** | **Classified Claims and Interests** | | 11 |
|  | 1. | Secured Claims | 11 |
|  | 2. | Priority Non-Tax Claims | 13 |
|  | 3. | General Unsecured Claims | 13 |
| **E.** | **Acceptance or Rejection of Plan** | | 13 |
| **F.** | **Means of Effectuating the Plan** | | 14 |
|  | 1. | Funding for the Plan | 14 |
|  | 2. | Distributions | 16 |
| **III.** | **TREATMENT OF MISCELLANEOUS ITEMS** | | 16 |
| **A.** | **Executory Contracts and Unexpired Leases** | | 16 |
|  | 1. | Assumptions | 16 |
|  | 2. | Rejections | 17 |
| **B.** | **Changes in Rates Subject to Regulatory Commission Approval** | | 17 |
| **C.** | **Retention of Jurisdiction** | | 18 |
| **D.** | **Procedures for Resolving Contested Claims** | | 18 |
| **E.** | **Notices under the Plan** | | 18 |
| **IV.** | **EFFECT OF CONFIRMATION OF PLAN** | | 19 |
| **A.** | **Discharge** | | 19 |
| **B.** | **Re-vesting of Property** | | 19 |
| **C.** | **Modification of Plan** | | 19 |
| **D.** | **Post-Confirmation Conversion/Dismissal** | | 20 |
| **E.** | **Post-Confirmation Quarterly Fees** | | 20 |

## I.    INTRODUCTION

David Ristick is the Debtor in the Bankruptcy Case captioned above.  This document is the Plan of Liquidation proposed by the Debtor.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey, and which is provided to help you understand this Plan.

## II.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each Class will receive under the Plan.

### B.    Definitions

**Scope of Definitions**.  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this section of the Plan.  In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.    **"5 Nottingham Way Property"** shall mean the real estate and all improvements thereon located at located at 5 Nottingham Way, Blackwood, NJ 08012.

2.    **"5 Samantha Court Property"** shall mean the real estate and all improvements thereon located at 5 Samantha Court, Sewell, NJ 08080.

3.    **"13 Raintree Drive Property"** shall mean the real estate and all improvements thereon located at 13 Raintree Drive, Sicklerville, NJ 08081.

4.      **"170 Hurffville-Crosskeys Road Property"** shall mean the real estate and all improvements thereon located at 170 Hurffville-Crosskeys Road, Sewell, NJ 08080.

5.      **"A&G"** shall mean Archer & Greiner, A Professional Corporation, counsel for the Debtor.

6.      **"Administrative Expense"** shall mean any cost or expense of administration of the Bankruptcy Case allowable under Section 507(a) and 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Debtor in connection with the proposal and confirmation of this Plan.

7.      **"Allowed"** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim or Equity Interest against such Debtor, or, if no proof of Claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to

which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

8.      **"Allowed Administrative Expense"** shall mean any Administrative Expense allowed under Section 503(b) and 507(a)(2) of the Bankruptcy Code.

9.      **"Allowed Unsecured Claim"** shall mean an Unsecured Claim that is or has become an Allowed Claim.

10.      **"Bankruptcy Case"** shall mean the above captioned bankruptcy case in which David Ristick is the Debtor.

11.      **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

12.      **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

13.      **"Bankruptcy Rules"** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

14.      **"Business Day"** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

15.    **"Claim"** shall mean any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code.

16.    **"Class"** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

17.    **"Code"** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

18.    **"Confirmation"** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

19.    **"Confirmation Hearing"** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

20.    **"Confirmation Order"** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

21.    **"Creditor"** shall mean any person that has a Claim against the Debtor, that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

22.  **"Debt"** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

23.  **"Debtor"** shall mean BF Industries, LLC.

24.  **"Disbursing Agent"** shall mean A&G, or any party appointed by and subject to Court approval, who shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

25.  **"Disclosure Statement"** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125, *et seq*. of the Bankruptcy Code.

26.  **"Effective Date"** shall mean the day on which the sale of the 170 Hurffville-Crosskeys Road Property closes.

27.  **"Equity Interest Holder"** shall mean the holder of an equity interest in the Debtor.

28.  **"Equity Interest"** shall mean any interest in the Debtor represented by membership interests, stock, warrants, options, or other rights to purchase any shares of stock or ownership rights in the Debtor.

29.  **"Estate"** shall mean the bankruptcy estate of the Debtor comprised of all of its assets upon the petition dates and after acquired property.

30.  **"Final Order"** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or

5

to seek review or rehearing of which having expired, has become final and is in full force and effect.

31. **"Impaired"** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

32. **"Person"** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

33. **"Petition Date"** shall mean May 3, 2017, the date on which the Debtor filed its petition for relief.

34. **"Plan"** shall mean the Plan of Reorganization filed in this Proceeding, together with any additional modifications and amendments.

35. **"Priority Non-Tax Claim"** shall mean a Claim entitled to priority under sections 507(a)(1),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

36. **"Priority Tax Creditor"** shall mean a Creditor holding a priority tax claim.

37. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

38. **"Proceeding"** shall mean the Chapter 11 Case of the Debtor.

39. **"Professional Persons"** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated

pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

      **40.**    **"Professional Fees"** means and refers to an Allowed Claim by any and all Professional Persons as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

      **41.**    **"Proponent"** means the Debtor.

      **42.**    **"Reorganized Debtor"** means the Debtor after confirmation of the Plan.

      **43.**    **"Secured Claim"** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

      **44.**    **"Unsecured Claim"** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code.  "Unsecured Claim" shall include all Claims against the Debtor, or any of them, that are not expressly otherwise dealt with in the Plan.

      **Other Definitions**.  A term used and not defined in this section, but that is defined in the Bankruptcy Code, Disclosure Statement or otherwise herein, shall have the meaning set forth in the Bankruptcy Code or as defined in the Disclosure Statement or herein. The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a whole and not

to any particular section, subsection, or clause contained in the Plan.  Moreover some terms

defined herein are defined in the section in which they are used.

## C.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified.

They are not considered impaired and they do not vote on the Plan because they are

automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such,

the Proponent has not placed the following claims in a class.  The treatment of these claims is

provided below.

### 1.    Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtor's

Bankruptcy Case which are allowed under Code Section 503(b).  Fees payable to the Clerk of the

Bankruptcy Court and the Office of the United States Trustee may also be due during the

Bankruptcy Case.  The Bankruptcy Code requires that all administrative expenses be paid on the

Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's unpaid administrative fees and expenses, an

estimate of future professional fees and other administrative claims and fees and their treatment

under this Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Archer & Greiner, P.C., attorneys for the Debtor | $35,000.00 | Paid in full on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property, or such other date to which the administrative claimant may agree. |

| | | |
|---|---|---|
| The Curchin Group, accountants for the Debtor | $2,500.00 | Paid in full on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property, or such other date to which the administrative claimant may agree. |
| Michelle Basmajian/Weichert Realtors | 6% of gross sale proceeds from sale of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property | Paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property and 5 Nottingham Way Property, or such other date to which the administrative claimant may agree. |
| Administrative Tax Claims | None | |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | |
| Clerk's Office fees | TBD | Paid in full at Confirmation, or as soon thereafter as is practical, from cash on hand. |
| Other Administrative Expenses | None | |
| United States Trustee Fees[1] | TBD | Paid in full at Confirmation, or as soon thereafter as is practical, from cash on hand. |
| **TOTAL** | **$37,500.00** | |

<u>Court Approval of Professional Compensation and Expenses Required</u>:  The Court must approve all professional compensation and expenses.  Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than thirty (30) days after the Confirmation Date.  Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.  No motion or application is required to fix

---

[1]All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the Bankruptcy Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are
determined by statute.

## 2.    Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described
by Code Section 507(a)(8).  The Bankruptcy Code requires that each holder of such a 507(a)(8)
priority tax claim receives the cash value of such Claim over a period not exceeding five years
from the Petition Date.  The following lists all of the Debtor's Section 507(a)(8) priority tax
claims and their treatment under this Plan:

| Claim No. | Creditor | Amount of Priority Tax Claim | Basis of Claim | Treatment |
|---|---|---|---|---|
| 12 | Colorado Department of Revenue | $9,697.00 | 2014 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 17 | State of New Jersey - Division of Taxation | $33,145.15 | 2014 | This Priority Tax Claim will be allowed as filed and will be paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 18 | State of New Jersey - Division of Taxation | $26,500.00 | 2016 taxes | The Debtor is in the process of reviewing this Priority Tax Claim.  To the extent that these taxes are due and owing from the Debtor, this Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |
| 20 | Utah State Tax Commission | $2,535.75 | 2015 | This Priority Tax Claim will be allowed as filed and will be paid, with interest as determined by applicable non-bankruptcy law, on the Effective Date of the Plan, or as soon thereafter as practical, from the sale proceeds of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Priority Tax Claim agrees to different treatment. |

### D.    Classified Claims and Interests

### 1.    Secured Claims

Secured Claims are claims secured by liens on property of the estate. The following represent all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| Class | Creditor | Insider? | Amount of Secured Claim | Basis of Claim | Impaired | Treatment |
|---|---|---|---|---|---|---|
| 1A | JPMorgan Chase Bank, N.A. | No | $81,358.30 | Lien on 2015 Cadillac Escalade | Yes | This Creditor was granted relief from the automatic stay on September 26, 2017 and has repossessed the vehicle. The Secured Claim of this Creditor is deemed satisfied, and this Secured Claim will be disallowed. |
| 1B | Ally Capital | No | $6,024.31 | Lien on 2013 Chevrolet Suburban | Yes | Unless the holder of this Secured Claim agrees to different treatment, the Debtor will pay the entire amount of this Secured Claim by making all post-Confirmation regular monthly payments of approximately $321.72 beginning on the month following the Effective Date of the Plan. All pre-Confirmation arrears (if any) will be capitalized and paid with interest and other allowable fees and charges. The source of payments will be the Debtor's income. The Debtor intends to retain the vehicle and title thereto. The Creditor may not possess or dispose of the vehicle so long as the Debtor is not in material default in performing his obligations under the Plan. |
| 1C | Ally Capital | No | $16,656.83 | Lien on 2014 Chevrolet Silverado | Yes | Unless the holder of this Secured Claim agrees to different treatment, the Debtor will pay the entire amount of this Secured Claim by making all post-Confirmation regular monthly payments of approximately $575.33 beginning on the month following the Effective Date of the Plan. All pre-Confirmation arrears (if any) will be capitalized and paid with interest and other allowable fees and charges. The source of payments will be the Debtor's income. The Debtor intends to retain the vehicle and title thereto. The Creditor may not possess or dispose of the vehicle so long as the Debtor is not in material default in performing his obligations under the Plan. |

| 1D | Ditech Financial LLC fka Green Tree Servicing LLC | No | $137,156.08 | Mortgage on 5 Nottingham Way Property | Yes | This Claim will be allowed in the amount filed and will be paid at closing of the sale of the 5 Nottingham Way Property, unless the holder of this Claim agrees to different treatment. |
| 1E | Glia Group LLC | No | $10,978.85 | Tax Lien on 170 Hurffville Crosskeys Road Property | Yes | This Claim will be allowed in the amount as may be calculated by the Tax Collector of Washington Township (as of February 2, 2018 the amount was $8,191.53) and will be paid at closing of the sale of the 170 Hurffville-Crosskeys Road Property, unless the holder of this Claim agrees to different treatment. |
| 1F | Santander Consumer USA, Inc. | No | $30,208.29 | Lien on 2013 Chevrolet Traverse | Yes | This vehicle is title to and in the possession of Sam C. Mitchell, a co-borrower on this loan. The Debtor is not in possession of the vehicle. The Confirmation Order shall constitute an order granting relief from the automatic stay permitting the Secured Creditor to possess and dispose of the vehicle, subject to any rights of Sam C. Mitchell. This Secured Claim is deemed satisfied through this treatment. |
| 1G | Nationstar Mortgage LLC | No | $219,465.56 | Mortgage on 13 Raintree Drive Property | Yes | This Creditor was granted relief from the automatic stay on June 8, 2018, and the 13 Raintree Drive Property was sold at Sherriff's sale on October 3, 2018. The Secured Claim of this Creditor is deemed satisfied, and this Secured Claim will be disallowed. |
| 1H | TCA Global Credit Master Fund, LP | No | $5,227,940.09 | UCC-1 on "all assets" | Yes | This Secured Claim will be bifurcated. This Secured Creditor will received $30,000.00 on account of its Secured Claim, payable in accordance with the Settlement Agreement, with the balance to be treated as a fully Unsecured Claim. |
| 1I | Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-3, as assignee of OceanFirst Bank | No | $494,917.57 | Mortgage on 5 Samantha Court Property | Yes | This Creditor was granted relief from the automatic stay on April 2, 2019. The Secured Claim of this Creditor is deemed satisfied through foreclosure of the 5 Samantha Court Property, and this Secured Claim will be disallowed. |

### 2.      Priority Non-Tax Claims

Certain priority non-tax claims that are referred to in Code Sections 507(1),(a)(3), (4),

(5), (6), and (7) are entitled to priority treatment.  The following chart lists all classes containing

Debtor's 507(a)(1),(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their

treatment under this Plan:

| Class # | Description | Insider?<br>(Yes or No) | Impaired?<br>(Yes or No) | Proposed Treatment |
|---------|-------------|------------------|-------------------|--------------------|
| None | No Creditors in this Class | | | |

### 3.      General Unsecured Claims

General Unsecured Claims are Unsecured Claims not entitled to priority under Code

Section 507(a).  General Unsecured Claims will be paid as follows:

| Class # | Description | Impaired?<br>(Yes or No) | Proposed Treatment |
|---------|-------------|-------------------|--------------------|
| 2 | This Class contains all of the Debtor's Allowed General Unsecured Claims remaining unpaid, whether scheduled or filed by Creditors.  These Claims, subject to objection and final allowance, total approximately $6,170,613.33, as set forth in the Schedule of Claims attached hereto as Exhibit "B." | Yes | Allowed Unsecured Claims shall receive a pro rata distribution from the proceeds of (i) the 170 Hurffville-Crosskeys Road Property, and (ii) the 5 Nottingham Way Property, after payment of the Administrative Expenses and Allowed Priority Tax Claims, provided that Allowed Unsecured Claims for which a distribution would be less than $10.00 will not receive any distribution.  In no event will Allowed Unsecured Claims receive more than the full amount of the Allowed Claim. |

### E.      Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtor's Estate shall be entitled

to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if

the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half

in number of holders of the Allowed Claims of such class that have accepted or rejected the Plan.

In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

### F.    Means of Effectuating the Plan

### 1.    Funding for the Plan

The Plan will primarily be funded from the sale of two pieces of real estate as follows:

The Debtor shall sell the 170 Hurffville-Crosskeys Road Property, which is currently listed for sale with Michelle Basmajian of Weichert Realtors.  The sale shall be free and clear of all liens and encumbrances on the property.  The Confirmation Order shall act as an Order authorizing the sale of the property free and clear of all liens and encumbrances.  The Debtor does not believe that there are any liens or encumbrances on the 170 Hurffville-Crosskeys Road Property other than the following:

- Tax Sale Certificate No. 12-00172 sold to US Bk-Cust/Pro Cap II, LLC – This tax sale certificate was redeemed prior to the Petition Date but never discharged of record.

- Tax Sale Certificate No. 16-00198  sold to GLIA Group, LLC – This tax sale certificate will be redeemed at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property .

- NJ Division of Taxation judgment DJ-167396-2016 in the sum of $50,706.30 – The Debtor believes that this judgment related to Claim No. 17 filed by the State of New Jersey Division of Taxation, which claim will be paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property.

- De Lage Landen Financial Services, Inc. judgment DJ-233188-2016 in the sum of $750,553.32 -  The Debtor does not believe that this Creditor levied upon the 170 Hurffville-Crosskeys Road Property.  Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

14

- South Jersey Adjustment Bureau judgment DJ-026201-2017 in the sum of $4,873.96 - The Debtor does not believe that this Creditor levied upon the 170 Hurffville-Crosskeys Road Property. Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

The net sale proceeds from the sale of the 170 Hurffville-Crosskeys Road Property will be utilized to fund payments for Administrative Expenses, Allowed Priority Tax Claims, and a distribution to Allowed Unsecured Creditors.

The Debtor shall also sell the 5 Nottingham Way Property, which is currently listed for sale with Michelle Basmajian of Weichert Realtors. The sale shall be free and clear of all liens and encumbrances on the property. The Confirmation Order shall act as an Order authorizing the sale of the property free and clear of all liens and encumbrances. The Debtor does not believe that there are any liens or encumbrances on the 5 Nottingham Way Property other than the following:

- Mortgage of Ditech Financial LLC fka Green Tree Servicing LLC with an estimated payoff as of January 23, 2019, of $165,038.35.

- NJ Division of Taxation judgment DJ-167396-2016 in the sum of $50,706.30 – The Debtor believes that this judgment related to Claim No. 17 filed by the State of New Jersey Division of Taxation, which claim will be paid at closing from the sale proceeds of the 170 Hurffville-Crosskeys Road Property.

- De Lage Landen Financial Services, Inc. judgment DJ-233188-2016 in the sum of $750,553.32 - The Debtor does not believe that this Creditor levied upon the 5 Nottingham Way Property. Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

- South Jersey Adjustment Bureau judgment DJ-026201-2017 in the sum of $4,873.96 - The Debtor does not believe that this Creditor levied upon the 5 Nottingham Way Property. Accordingly, the Confirmation Order shall act as an Order pursuant to Section 544 avoiding this judgment lien.

The net sale proceeds from the sale of the 5 Nottingham Way Property will be utilized to fund payments for any remaining Administrative Expenses and Allowed Priority Tax Claims that

are not paid from the sale of the 170 Hurffville-Crosskeys Road Property, and to fund a distribution to Allowed Unsecured Creditors.

On confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand from the sale of the 170 Hurffville-Crosskeys Road Property to make the payments required on the Effective Date.

To the extent that the 170 Hurffville-Crosskeys Road Property is not under agreement of sale on or before the date which is six (6) months from the date of Confirmation, the Debtor shall retain an auctioneer to auction the 170 Hurffville-Crosskeys Road Property

### 2.        Distributions

A&G shall act as the disbursing agent for the purposes of making all distributions provide for under the Plan.  Distributions and deliveries to holders of Allowed Claims will be made by the Disbursing Agent at the addresses set forth on the proofs of claim filed by the holders, or, if no proof of claim has been filed, at the address listed in the Debtor's schedules or at the last known address, if different.

### III.      TREATMENT OF MISCELLANEOUS ITEMS

#### A.        Executory Contracts and Unexpired Leases

##### 1.        Assumptions

The following are the unexpired leases and executory contracts to be assumed as obligations of the Reorganized Debtor under this Plan, along with Debtor's projected cure amount:

| Contract/Lease Counterparty | Contract/Lease Description | Proposed Cure Amount |
|---|---|---|

| None | | |
|------|------|------|

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the Reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above at the designated cure amount.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, or to the proposed cure amount, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**2.     Rejections**

On the Effective Date, all executory leases and contracts not assumed shall be deemed to be rejected.  The order confirming the Plan shall constitute an order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  Please see the Disclosure Statement for the specific date for filing of objections to the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY (30) DAYS FROM THE EFFECTIVE DATE**.  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.     Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

### C.  Retention of Jurisdiction

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.  In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Plan Administrator, Debtor or the Reorganized Debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

### D.  Procedures for Resolving Contested Claims

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Debtor or any party in interest up to and including sixty (60) days following the date that the Confirmation Order becomes a Final Order.  The Debtor shall reserve such amounts as may be necessary to pay any disputed Claim or interests, if Allowed.  With respect to disputed Claims or interests, the disputed Claims will be paid or receive such other treatment as provided for similar claims of their Class under the Plan by the Debtor upon entry of an Order deeming such Claim an Allowed Claim.

### E.  Notices under the Plan

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and:

1.      If sent to the Debtor or Disbursing Agent, addressed to:

Jerrold S. Kulback, Esquire
Three Logan Square, 35th Floor
1717 Arch Street
Philadelphia, PA 19103
jkulback@archerlaw.com

## IV.   EFFECT OF CONFIRMATION OF PLAN

### A.   Discharge

Confirmation of the Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

The provisions of the Plan shall be binding upon the Debtor, all Creditors, regardless of whether such Claims are impaired or whether such parties accepted the Plan, upon confirmation thereof.

### B.   Re-vesting of Property

Except as may be provided herein, confirmation re-vests all of the property of the Estate in the Reorganized Debtor.  All property shall revest in the Reorganized Debtor free and clear of all liens, claims and encumbrances, except as may be retained under the Plan.

### C.   Modification of Plan

The Debtor may modify the Plan at any time before Confirmation. However, the Court may require a new Disclosure Statement or re-voting on the Plan if the Debtor modifies the Plan before Confirmation.  The Debtor may also seek to modify the Plan at any time after

Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

### D.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will re-vest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Court during this case.

### E.    Post-Confirmation Quarterly Fees

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the office of the United States trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

Respectfully submitted,

Dated:  April 18, 2019                    /s/  David Ristick    .
                                          DAVID RISTICK

216278622v1

20